**19-17423**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

REBEKAH CHARLESTON;
ANGELA DELGADO-WILLIAMS,

        Petitioner-Appellants,

and LEAH ALBRIGHT-BYRD

        Plaintiff,

    vs.

STATE OF NEVADA; *et al.*,

        Defendant-Appellees.

_____

LANCE GILMAN; *et al.,*

        Movants.

D.C. No. 3:19-CV-00107-
MMD-WGC
( District of Nevada, Reno )

*Appeal from the United States District Court*
*for the District of Nevada*

## STATE OF NEVADA'S ANSWERING BRIEF

AARON D. FORD
Attorney General
GREGORY L. ZUNINO (Bar No. 4805)
Deputy Solicitor General
Office of the Attorney General
100 North Carson Street
Carson City, Nevada 89701-4717
T: (775) 684-1237
E: gzunino@ag.nv.gov

# TABLE OF CONTENTS

PAGE

TABLE OF CASES AND AUTHORITIES CITED ..............................ii-iv

I.    STATEMENT OF JURISDICTION.................................................. 1

II.    STATEMENT OF THE ISSUES ..................................................... 1

III.    STATEMENT OF THE CASE ........................................................ 2

IV.    STATEMENT OF THE ARGUMENT ........................................... 3

V.    ARGUMENT ..................................................................................... 6

     A.    Standard of Review .................................................................. 6

     B.    Appellants Cannot Establish that NRS §§ 244.345 and
         201.354 are the Source of Their Injuries ................................ 8

     C.    Appellants Cannot Demonstrate that a Favorable
         Decision Will Redress their Injuries....................................... 13

     D.    Federal Anti-Sex Trafficking Statutes do not
         Confer Standing upon Appellants.......................................... 15

VI.    CONCLUSION................................................................................. 23

STATEMENT OF RELATED CASES .................................................. 24

CERTIFICATE OF COMPLIANCE ..................................................... 25

CERTIFICATE OF SERVICE .............................................................. 26

i

# TABLE OF CASES AND AUTHORITIES CITED

<u>CASES</u>                                                          PAGE

*Armstrong v. Exceptional Child Care, Inc.,*
   575 U.S. 320, 324–26 (2015) .................................................................. 17

*Berhard v. County of Los Angeles,*
   279 F.3d 862, 867 (9th Cir. 2002) ........................................................ 6

*Blessing v. Freestone,*
   520 U.S. 329, 340 (1997) ...................................................................... 18

*City of Los Angeles v. Lyons,*
   461 U.S. 95, 110–112 (1983) ............................................................7, 14

*Clapper v. Amnesty International USA,*
   586 U.S. 398, 408 (2013) ........................................................................ 7

*Coyote Publishing, Inc. v. Miller,*
   598 F.3d 592, 607 (9th Cir. 2010) ........................................................ 21

*Crimson Galeria Limited Partnership v. Healthy Pharms, Inc.,*
   337 F. Supp.3d 20, 32–33 (D. Mass 2018).......................................... 12

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
   528 U.S. 167, 185 (2000) ........................................................................ 8

*Gonzaga University v. Doe,*
   536 U.S. 273, 284 (2002) ...................................................................... 17

*Gonzales v. Raich,*
   545 U.S. 1, 34 (2005).............................................................................. 5

*Gratz v. Bollinger,*
   539 U.S. 244, 284 (2003) ...................................................................... 15

*Lujan v. Defenders of Wildlife,*
504 U.S. 555, 559, 560-61 (1992) .....................................................7, 12

PAGE

*Marbury v. Madison*,
 1 Cranch 137, 2 L.Ed. 60 (1803) .......................................................... 5

*O'Shea v. Littleton*,
 414 U.S. 488, 497 (1974) ..................................................................... 14

*Raines v. Byrd*,
 521 U.S. 811, 818 (1997) ....................................................................... 5

*S.D. Myers, Inc. v. City and County of San Francisco*,
 253 F.3d 461, 474 (9th Cir. 2001) ......................................................... 6

*Safe Streets Alliance v. Hickenlooper*,
 859 F.3d 865, 904 (10th Cir. 2017) ...............................................12, 20

*Simon v. Eastern Ky. Welfare Rights Organization*,
 426 U.S. 26, 37 (1976) .......................................................................... 5

*U.S. v. Richardson*,
 418 U.S. 166, 171 (1974) ....................................................................... 5

*Valley Forge Christian College v. Americans United for*
 *Separation of Church and State, Inc.*,
 454 U.S. 464, 485–86 (1982) .............................................................. 13

STATUTES                                                               PAGE

NRS § 201.300(2)(a)(1)–(2)..................................................................2, 3

NRS § 201.354..................................................................................... 2

NRS § 244.345..................................................................................... 2

NRS § 201.354..................................................................................... 2

NRS § 244.345..................................................................................... 2

NRS §§ 244.345 and 201.354 .......................................................passim

CONSTITUTIONAL PROVISIONS                                    PAGE

Article III, § 2 of the U.S. Constitution ....................................1, 5, 6, 23

22 U.S.C. § 7101–7114....................................................................2,16, 20

42 U.S.C. § 1983................................................................................ 17

Mann Act U.S.C. 18 § 2422(a) 2421-2424 .........................................2, 16

## I.    STATEMENT OF JURISDICTION

Based upon the authorities cited in Appellants' jurisdictional statement, the State of Nevada and Governor Steve Sisolak (collectively the "State"), by and through counsel, agree that the District Court would have had jurisdiction over Appellants' claims but for Appellants' failure to establish standing as required by Article III, § 2 of the U.S. Constitution.  The District Court correctly concluded that it did not have jurisdiction over Appellants' claims. Or. at p. 9 (ER 9).

## II.    STATEMENT OF THE ISSUES

It is undisputed that Appellants Rebekah Charleston and Angela Delgado-Williams were victimized by interstate sex traffickers.  The issues here are: (1) whether Appellants have alleged a concrete injury that is fairly traceable to the existence of Nevada statutes delegating to local officials the authority to legalize and regulate brothels at the county level of government; (2) whether Appellants' past injuries, assuming they are fairly traceable to the statutes in question, can be redressed by injunctive or declaratory relief against the State; and (3) whether federal anti-sex trafficking statutes confer upon Appellants a substantive right

to bring a private cause of action against the State for alleged civil rights violations relating to the existence of brothels.

## III. STATEMENT OF THE CASE

Appellants have filed a federal lawsuit against the State seeking to invalidate NRS §§ 244.345 and 201.354 on grounds that these statutes are preempted by a host of federal anti-sex trafficking statutes. Compl. at pp. 36–39 (ER 46–49). NRS § 244.345 delegates to Nevada's county officials the authority to license and regulate brothels, while NRS § 201.354 decriminalizes sex work when it is safely conducted within a regulated, county-licensed brothel. These statutes do not conflict with federal statutes. *See* Mann Act, codified at 18 U.S.C. §§ 2421–2424 ("Mann Act"), and Victims of Trafficking and Violence Protection Act of 2000, codified at 22 U.S.C. §§ 7101–7114 ("TVPA"). To the contrary, NRS § 201.300(2)(a)(1)–(2) complements these federal laws insofar as it too criminalizes sex trafficking.

As noted above, it undisputed that Ms. Charleston and Ms. Delgado-Williams were victimized by criminals engaged in interstate sex trafficking. Or. at p. 2 (ER 2). With one exception, Appellants do not allege that they worked in a Nevada brothel, or had dealings with a

2

brothel owner, manager or agent. Or. at p. 8 (ER 8). Although Ms. Charleston alleges that she was forced to work in a Nevada brothel, she describes her injuries as being attributable to criminal sex traffickers, not to any tortious acts or omissions on the part of Nevada public officials. Compl. at 19–20 (ER 29–30).

Like federal law, Nevada law sets forth criminal penalties for sex trafficking. *See* NRS § 201.300(2)(a)(1)–(2). Appellants theorize that Nevada's legal brothels serve as a catalyst for illegal interstate sex trafficking. Appellants have not sued any brothel owners, brothel managers, or sex traffickers, nor have they specifically identified any tortious conduct on the part of local regulators or law enforcement officials. Their grievance relates specifically to the existence of NRS §§ 244.345 and 201.354. Although they have explained at length why NRS §§ 244.345 and 201.354 are objectionable for reasons of public policy, Appellants cannot trace a concrete injury to the existence of these statutes.

## IV.   STATEMENT OF THE ARGUMENT

As victims of illegal interstate sex trafficking, Appellants trace their injuries to NRS §§ 244.345 and 201.354 through a long, meandering

thread of causation that allegedly involves lax enforcement by local law enforcement officials and regulators, predatory behavior by unscrupulous brothel owners and brothel managers, misleading tourism-related marketing and advertising campaigns, and inaccurate public perceptions concerning the legality of prostitution in Las Vegas, Nevada. Compl. at 1–40 (ER 11–50); Compl. App. at 1–241 (ER 56–301).

In their own words, Appellants seek "to close the legal loopholes that allow brothel owners, pimps, and traffickers to profit from Nevada's legally authorized exploitation and industrialization of women's bodies." Br. at 10. In addition to injunctive and declaratory relief, Appellants request relief in the form of "a court-ordered fund for survivors" of interstate sex trafficking. Compl at 39 (ER 49). These statements make it clear that Appellants' objective is not to secure redress for their own injuries, but to mitigate what they perceive to be a societal harm with roots in sex tourism, both legal and illegal.

To this end, Appellants invited the District Court to expand the reach of federal statutory law to encompass legal, intrastate sex work. Compl. at pp. 5–9 (ER 15–19). Expanding federal law is quite clearly a legislative function, the exercise of which would possibly even exceed the

powers granted to Congress under the Commerce Clause. *See Gonzales v. Raich*, 545 U.S. 1, 34 (2005) (Scalia, J., concurring) ("[U]nlike the channels, instrumentalities, and agents of interstate commerce, activities that substantially affect interstate commerce are not themselves part of interstate commerce, and thus the power to regulate them cannot come from the Commerce Clause alone.")

As a foray into the legislative realm, Appellants' complaint presents precisely the type of case that the framers envisioned when they drafted the case-or-controversy requirement of Article III, § 2 of the U.S. Constitution. *See U.S. v. Richardson*, 418 U.S. 166, 171 (1974) ("As far back as *Marbury v. Madison*, 1 Cranch 137, 2 L.Ed. 60 (1803), this Court held that judicial power may be exercised only in a case properly before it—a 'case or controversy' not suffering any of the limitations of the political-question doctrine, not then moot or calling for an advisory opinion."); *Raines v. Byrd*, 521 U.S. 811, 818 (1997) ("'No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'") (*quoting Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 37 (1976)). Because Appellants cannot trace

their injuries to the existence of NRS §§ 244.345 and 201.354, much less explain how their demands for declaratory and injunctive relief will redress their injuries, this Court should affirm the decision of the District Court.

## V.   ARGUMENT

### A.   Standard of Review

Standing is a question of law reviewed *de novo*. *Berhard v. County of Los Angeles*, 279 F.3d 862, 867 (9th Cir. 2002) (*citing S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461, 474 (9th Cir. 2001)). As a matter of law, the District Court correctly concluded that Appellants failed to establish standing as required by Article III, § 2 of the U.S. Constitution. Or. at pp. 1–9 (ER 1–9).  Appellants made detailed factual allegations below, even attaching many hundreds of pages of exhibits to their pleadings.  Compl. at pp. 1–40 (ER 11–55); Compl. App. at pp. 1–241 (ER 59–301); Opp. at pp. 1–24 (ER 343–366); Opp. App. at pp. 1–498 (ER 369–877).  However, their claims fail not for a lack of specificity or evidence, but because they fail to identify a causal relationship between their factual injuries, as alleged, and some tortious, illegal or otherwise

unconstitutional action that can be attributed to the State under legal principles of standing.

Article III, § 2 empowers the federal judiciary to hear only "Cases" and "Controversies", not policy debates. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). The case-or-controversy requirement of Article III requires that Appellants establish their "standing" as a jurisdictional prerequisite to the prosecution of their suit against the State of Nevada. *Clapper v. Amnesty International USA*, 586 U.S. 398, 408 (2013). To establish standing, Appellants must show that their alleged injury is "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotations and citations omitted). Additionally, they must show a "causal connection" between the alleged injury and the conduct about which they complain. *Id*. As a final matter, Plaintiffs may not offer mere speculation that a decision in their favor, namely a decision invalidating NRS §§ 244.345 and 201.354, will redress the trauma that they suffered as the result of having been abused by criminal interstate sex traffickers. *Id*. at 561. *See also City of Los Angeles v. Lyons*, 461 U.S. 95, 110–112 (1983).

Moreover, Appellants must demonstrate standing separately for each form of relief sought. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). Appellants seek injunctive and declaratory relief with respect to each of their three causes of action against the State. Compl. at pp. 35–39 (ER 45–49). However, their claims are all premised upon the conclusory allegation that their injuries are "fairly traceable" to the existence of NRS §§ 244.345 and 201.354. Br. at 32. These statutes, however, do not act affirmatively upon Appellants or anyone else. They merely set forth the legal authority by which local officials may, in their discretion, legalize and regulate brothels.

B.   Appellants Cannot Establish that NRS §§ 244.345 and 201.354 are the Source of Their Injuries

By their own admission, Appellants fell victim to the predatory behavior of criminal actors, not laws. Compl. at pp. 19-34 (ER 29–44). Appellants further attribute their injuries to misleading marketing and advertising campaigns, Compl. at pp. 6–9 (ER 16–19), but without making a tangible connection to NRS §§ 244.345 and 201.354. For example, Ms. Charleston, a Texas native, was abused and sexually exploited by a person whom she originally considered to be her boyfriend.

Compl. at p. 19:7–11 (ER 29). This person traded her to another sex trafficker who "exploit[ed] her all across the country." Compl. at p. 19:12–13 (ER 29).

Although Ms. Charleston's abuser brought her to a Nevada brothel for an unspecified period of time, he "decided to move her to Las Vegas for greater profits in the illegal sex trade." Compl. at p. 20:1–2. (ER 30). Ms. Charleston was exploited for a period of more than ten years by traffickers who brought her in and out of Nevada in connection with variety of illegal activities. Compl. p. 20:14–22. (ER 30). Aside from a passing reference to the Moonlight Bunny Ranch, Ms. Charleston does not specifically identify any legal Nevada brothels through which she was trafficked. Compl. at pp. 19:15–25, 20:1–23 (ER 29, 30). The essence of her grievance is that Nevada's legal brothels fuel a demand for the illegal prostitution and trafficking rings that plague the nation as a whole. Compl. at pp. 9–18 (ER 19–28).

Ms. Delgado-Williams' story has elements in common with that of Appellant Charleston. Appellant Delgado-Williams suffered abuse in Nevada, among other states, *see* Compl. at ¶¶ 7, 8, 127, 129 and 160 (ER 13, 35, 39), but unlike Ms. Charleston, Ms. Delgado-Williams describes

9

most of her abuse as having occurred in Houston, Dallas, Los Angeles, Chicago, and Boston, and with no direct connection to a legal Nevada brothel, *see* Compl. at ¶¶ 92, 100, 141, 149, 156, and 160–65 (ER 31, 32, 36–39).

The only thread between Appellants' injuries and the statutes which they assail are the conclusions of social scientists and others who posit that legal prostitution fuels the demand for illegal prostitution, thus encouraging criminal sex traffickers to meet that demand. Compl. at pp. 9–18 (ER 19–28). This thread is far too tenuous to serve as the basis for Appellants' standing in this case. While it may be true that legal prostitution augments the overall demand for illegal prostitution, Appellants must demonstrate that their individual injuries are fairly traceable to the existence of NRS §§ 244.345 and 201.354. Their lawsuit ultimately begs the question whether they would have been victimized by sex traffickers in the absence of NRS §§ 244.345 and 201.354. This is an unanswerable question because far too many variables influence the course of any person's life. As the District Court stated:

> Plaintiffs specifically allege, among other things:
> (1) that third-party sex traffickers take advantage
> of the "misconception" that prostitution is legal in

all of Nevada, (2) that the "advertising and marketing from legal brothels . . . persuade, induce and entice people to travel in from across the country and all over the world to purchase prostituted persons in Nevada," and (3) that sex buyers travel to Nevada for the sole purpose of purchasing sex. Ultimately, the Court is not convinced that legal prostitution in Nevada's counties which Plaintiffs challenge here is anything more than the attenuated cause of Plaintiffs' alleged injuries. This is evidenced by the fact that Plaintiffs—except Charleston—specifically assert they were sex trafficked in other states aside from Nevada. Moreover, that Plaintiffs were unlawfully forced into prostitution and sex trafficked in Nevada and other states is not sufficiently traceable to Nevada laws permitting legal prostitution as opposed to other factors, namely the illicit behaviors of private bad actors.

Or. at p. 8 (ER 8).

The above passage cogently summarizes the legal theory upon which Appellants base their claims, and the reasons why the physical and emotional trauma that they suffered at the hands of criminal sex traffickers is not "fairly traceable" to the State. To establish standing, Appellants must show that they have suffered an injury in fact that is fairly traceable to the challenged conduct of the State and is likely to be

redressed by a favorable judicial decision. *Lujan*, 504 U.S. at 560–61 (1992).

Here, Appellants allege an ongoing injury in the form of emotional trauma, but the State is not a source or cause of that trauma. Even if brothels are abstractly related to illegal sex trafficking, the State plays no role in the licensure or regulation of brothels. The State has merely enacted laws that authorize county officials to license and regulate brothels. As it pertains to the State, Appellants' grievance is nothing more than a policy disagreement about the relative harms and benefits associated with legal prostitution. There is currently a similar policy debate surrounding the legalization of marijuana. *See, e.g., Crimson Galeria Limited Partnership v. Healthy Pharms, Inc.*, 337 F. Supp.3d 20, 32–33 (D. Mass 2018) (homeowners aggrieved by marijuana cultivation facility did not have substantive rights under federal drug laws such that they could sue the Massachusetts Department of Public Health); *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 904 (10th Cir. 2017) (aggrieved homeowners did not have "viable cause of action" under federal drug laws against the state of Colorado and one of its counties).

12

As with the plaintiffs in the above-cited cases concerning the role of state and local governments in legalizing the use of marijuana, Appellants object to legal prostitution on public policy grounds. Their lawsuit was not filed to redress a constitutional injury perpetrated by the State or a state or local government actor. The trauma that they suffered as victims of interstate sex trafficking undoubtedly shaped their opinions about the social utility of legal prostitution, but the "psychological consequence . . . produced by observation of conduct with which one disagrees . . . is not an injury sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 485–86 (1982). In the absence of a justiciable case or controversy, any proposal to repeal Nevada's laws authorizing the licensure and regulation of brothels is a matter for the Nevada Legislature, not the federal judiciary.

C. Appellants Cannot Demonstrate that a Favorable Decision Will Redress their Injuries

Appellants emphasize the alleged "past wrongs" that ostensibly give rise to their claims for injunctive and declaratory relief against the

State. Compl. at p. 10 (ER 20). As discussed above, these past wrongs were perpetrated by criminal sex traffickers, not state or local public officials. Moreover, the past wrongs do not support an inference that future harm to Appellants is likely or even remotely probable.

By their own admission, Appellants have returned to their home state of Texas. Compl. at ¶¶ 4 and 5 (ER 2). Because they do not allege that they are currently working or living in an environment where they may potentially fall victim to sex traffickers, their claims for injunctive and declaratory relief appear to be advanced on behalf of third parties who currently find themselves in dangerous situations. Appellants' demand for "a court-ordered fund for survivors" of interstate sex trafficking further bolsters the conclusion that their claims are advanced on behalf of third parties. Compl. at p. 39 (ER 49).

However, Appellants must plead facts demonstrating that they have standing to request prospective relief for an alleged injury that they, not others, will likely sustain in the immediate future if the requested relief is not granted. *See Lyons*, 461 U.S. at 110–112 (victim of a police chokehold seeking injunctive relief was unable to show sufficient likelihood of recurrence as to him to establish standing for the requested

14

relief).  *See also O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) (no

"sufficient immediacy and reality" to allegations of possible future injury

from past racially discriminatory enforcement and administration of

justice).  Appellants allege no facts from which one could reasonably infer

that legal brothels in Nevada are the source of a potential future injury

to Appellants in Texas.  Consequently, the District Court correctly

concluded that "'past injuries do not give [Appellants] standing to obtain

injunctive relief to protect third parties from similar harms.'"  Or. at p. 7

(ER 7) (*quoting Gratz v. Bollinger*, 539 U.S. 244, 284 (2003)).

> D.  Federal Anti-Sex Trafficking Statutes do not Confer
>     Standing upon Appellants

Appellants have alleged three separate causes of action.  Compl. at

pp. 35–38 (ER 45–48).  But each of those causes of action is premised

upon the same alleged conflict between state and federal law.  For

example, for their first cause of action, Appellants allege that "[b]y

disregarding federal law, the acts of Defendants . . . have created the

danger that has led to irreparable harm to Plaintiffs and other victims of

sex trafficking by exposing them to the dangers of sex trafficking and

prostitution without protections from the inherent dangers the federal

law was enacted to prevent." Compl. at p. 35:7–-11 (emphasis added) (ER 45). In the preceding sentence, the alleged "disregard[] of federal law" is a reference to the State's enactment of NRS §§ 244.345 and 201.354. Compl. at pp. 5–6 (ER 15–16).

For their second cause of action, Appellants allege that "as a direct result of Nevada State officials and lawmakers disregarding United States Code, the Plaintiffs and similarly situated Jane Doe victims who have been prostituted in the State of Nevada from out-of-state, have been deprived of their federal rights which have been provided to them under the Mann Act (U.S.C. 18 § 2422(a)) and the TVPA (22 U.S.C. § 7101–7114)." Compl. at pp. 35:25–36:1–4 (emphasis added) (ER 45-46). Once again, the alleged tortious conduct by the State (*i.e.* "disregarding United States Code") is the enactment of NRS §§ 244.345 and 201.354. Compl. at pp. 5–6 (ER 15–16).

Finally, for their third cause of action, Appellants allege that "[b]y disregarding federal law, the acts of Defendants . . . have created the danger that has led to irreparable harm to Plaintiffs and other victims of sex trafficking by exposing them to the dangers of sex trafficking and prostitution without protections from the inherent dangers the federal

16

law was enacted to prevent." Compl. at p. 38:17-20. (emphasis added) (ER 48). Predictably, the tortious conduct by the State (*i.e.* "disregarding federal law") is alleged to be the enactment of NRS §§ 244.345 and 201.354. Compl. at pp. 5–6 (ER 15–16).

In substance, Appellants have stated a single claim against the State based upon an alleged conflict between (1) NRS §§ 244.345 and 201.354 and (2) the anti-sex trafficking provisions of federal law, namely the provisions of the Mann Act and the TVPA. Appellants invoke the Supremacy Clause as supporting their right to sue the State for the State's alleged failure to adhere to federal law. Compl. at 36–39 (ER 46–49). However, the Supremacy Clause does not itself confer any federal rights and does not provide a private right of action to litigants. *Armstrong v. Exceptional Child Care, Inc.*, 575 U.S. 320, 324–26 (2015). Furthermore, the provisions of 42 U.S.C. § 1983 merely provide "a mechanism for enforcing individual rights secured elsewhere." *Gonzaga University v. Doe*, 536 U.S. 273, 284 (2002). To support a claim under § 1983, a plaintiff must identify the source of law that confers the individual right for which the plaintiff seeks vindication. *Id*. "Once a

plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983." *Id.*

The Mann Act and the TVPA do not confer privately enforceable rights against state officials, particularly when those officials have no enforcement functions. Since NRS §§ 244.345 and 201.354 are not "enforced" in the traditional sense of the word, the District Court accurately characterized the Appellants' lawsuit as a challenge to the constitutionality of the law itself, based upon the premise "that but for Nevada's laws permitting legal prostitution, [Appellants] would not have been trafficked through interstate commerce into the State to engage in commercialized sex in Nevada brothels." Or. at p. 8:1–3 (emphasis added) (ER 8).

When, as here, the subject of a § 1983 claim is an alleged conflict between laws, the federal courts "have traditionally looked at three factors when determining whether a statutory provision gives rise to a federal right." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). Those three factors are: 1) whether Congress expressed a legislative intent to benefit the plaintiff; 2) whether judicial enforcement of the right would strain judicial competence; and 3) whether the statute unambiguously

imposes a binding obligation on the States. *Id.* Here, none of the relevant factors is satisfied.

Furthermore, "even where a statute is phrased in . . . explicit rights-creating terms, a plaintiff suing under an implied right of action still must show that the statute manifests an intent "to create not just a private right but also a private remedy." *Gonzaga University*, 563 U.S. at 284. The Mann Act and the TVPA cannot give rise to Appellants' requested remedy, a court-ordered nullification of Nevada law, because the Mann Act and the TVPA do not expressly or impliedly override state or local legislation. In summary, the Mann Act and the TVPA are federal criminal statutes that apply to interstate sex trafficking only. These statutes do not occupy any regulatory field, much less a regulatory field in which Plaintiffs conduct their business or personal affairs.

In support of the theory of causation upon which their lawsuit is based, Appellants argue that Nevada's statutes promote interstate sex trafficking. Br. at 10–11. Even if this could be proven, Appellants' claim to standing finds no support in the Mann Act or the TVPA. As a matter of federal criminal law, the Mann Act and the TVPA are silent on the topic of legal brothels. As Appellants concede, the Mann Act and the

TVPA criminalize sex trafficking only when it implicates interstate travel or transportation. Compl. at pp. 4– (ER 14–15). And while the TVPA adopts various additional measures designed to aid in the investigation and prosecution of federal crimes in interstate and foreign commerce, the TVPA does not purport to displace state or local regulatory schemes. *See* 22 U.S.C. §§ 7101–7114. Since the licensure and regulation of brothels occurs wholly within the boundaries of Nevada's rural counties, the Mann Act and the TVPA do not, on their face, apply to Appellants' claims against the State. To the extent that Nevada's brothels may encourage interstate criminal activity that runs afoul of federal law, the Mann Act and the TVPA give federal prosecutors and investigators (not private litigants) the right to remedy the problem.

In summary, there is no textual support in the Mann Act or the TVPA for the proposition that Appellants have a private right to replace Nevada's regulatory scheme with a comprehensive ban on brothels. For example, in *Safe Streets Alliance v. Hickenlooper*, supra, the Tenth Circuit held that the federal Controlled Substances Act (CSA), which prohibits the possession and distribution of marijuana (among other drugs), did not confer upon private landowners a private right to

challenge Colorado's laws authorizing the licensure and regulation of marijuana dispensaries. 859 F.3d at 905–906. In that case, private landowners, as well as law enforcement officials from Colorado, Kansas and Nebraska, sought to nullify Amendment 64 to the Colorado Constitution on the ground that it conflicted with the CSA's prohibition against the use and distribution of marijuana.

Here, as in *Safe Streets Alliance*, Appellants' claim to standing is based upon rights allegedly conferred by federal criminal statutes. *Ibid*. Since the provisions of the Mann Act and the TVPA are explicitly limited in their application to crimes involving interstate travel and transportation, they cannot reasonably be construed to confer standing upon a private litigant who wishes to preempt an intrastate licensing and regulatory scheme. *Ibid*; s*ee also Crimson Galeria Limited Partnership*, 337 F. Supp.3d at 32–33.

As this Court observed in *Coyote Publishing, Inc. v. Miller*, the State's "position on the legality of prostitution in much of the state is essentially agnostic: county governments are free to license or prohibit brothels at their option." 598 F.3d 592, 607 (9th Cir. 2010) (internal citations omitted). Yet Appellants assert, without authority, that federal

law imposes an affirmative duty upon the State to ban all forms of prostitution on a statewide basis. And while it may run counter to Appellants' policy preferences, Nevada "has adopted a nuanced approach to the sale of sexual services, grounded in part in concern about the negative health and safety impacts of unregulated, illegal prostitution." *Id.* at 605.

"By permitting some legal prostitution, Nevada has been able to subject a portion of the market for paid sex to extensive regulation, while continuing severely to limit the diffusion of sexual commodification through its banning of prostitution where by far most Nevadans live (and where most outsiders visit), Clark County." *Ibid.* If not properly regulated, the activities of a private brothel owner, brothel manager, or brothel worker could admittedly impact interstate commerce in some manner, in violation of the Mann Act and the TVPA. But this does not logically point to the conclusion that Nevada law violates the U.S. Constitution. Nor can it serve as the basis for a private litigant's standing to bring suit against the State for having enacted laws that merely authorize county officials to license and regulate brothels within Nevada's rural counties.

## VI. CONCLUSION

Appellants present the Court with a policy dispute about the social utility of legal prostitution. This is not to minimize the trauma that Appellants suffered as the result of having been abused and exploited by criminal sex traffickers. They suffered injuries that could possibly have been compensated many years ago had they filed a different type of lawsuit against individual defendants. The instant dispute, however, does not present a justiciable controversy as required by Article III, § 2 of the U.S. Constitution. This Court should affirm the decision of the District Court.

RESPECTFULLY SUBMITTED this 3rd day of June, 2020.

AARON D. FORD
Attorney General

By: /s/ Gregory L. Zunino
GREGORY L. ZUNINO
Deputy Solicitor General

## STATEMENT OF RELATED CASES
## Pursuant to Circuit Rule 28-2.6

**9th Cir. Case Number(s) 19-17423**

The undersigned attorney or self-represented party states the following:

[**X**] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** */s/ Gregory L. Zunino*_____ **Date June 3, 2020**
*(use "s/[typed name]" to sign electronically-filed documents)*

24

# CERTIFICATE OF COMPLIANCE

**9th Cir. Case Number(s) 19-17423**

I am the attorney or self-represented party.

**This brief contains 4,459 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**X**] complies with the word limit of Cir. R. 32-1.

**Signature** *_/s/ Gregory L. Zunino_____* **Date June 3, 2020**
*(use "*s/[typed name]*" to sign electronically-filed documents)*

25

# CERTIFICATE OF SERVICE

**9th Cir. Case Number(s) 19-17423**

[**X**] I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Description of Document(s)** *(required for all documents)***:**

| |
|---|
| State of Nevada's Answering Brief |

## An electronic copy of the brief has been sent to:

Russell Greer
7901 South 3200 West
P.O. Box 152
West Jordan, Utah 84088
rullmark@gmail.com

**Signature** */s/ Sandra Geyer*                **Date June 3, 2020**
*(use "s/[typed name]" to sign electronically-filed documents)*