No. 19-17423

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

REBEKAH CHARLESTON; ANGELA
DELGADO-WILLIAMS,
      Plaintiffs-Appellants,

  and

LEAH ALBRIGHT-BYRD,
      Plaintiff,

  vs.

STATE OF NEVADA; STEVE SISOLAK;
LEGISLATURE OF THE STATE OF
NEVADA,
      Defendants-Appellees,

  and

LANCE GILMAN; CASH PROCESSING
SERVICES, INC.; RUSSELL GREER,
      Proposed Intervenor-Defendants.

Appeal from U.S. District Court,
District of Nevada, Reno,
No. 3:19-cv-00107-MMD-WGC

## NEVADA LEGISLATURE'S
## ANSWERING BRIEF

**KEVIN C. POWERS**, Chief Litigation Counsel
Nevada Bar No. 6781
NEVADA LEGISLATIVE COUNSEL BUREAU, LEGAL DIVISION
401 S. Carson St.
Carson City, NV 89701
Tel: (775) 684-6830; Fax: (775) 684-6761
E-mail: kpowers@lcb.state.nv.us
*Attorneys for Defendant-Appellee Nevada Legislature*

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ...........................................................iv

**INTRODUCTION**.........................................................................1

**STATEMENT OF JURISDICTION**.............................................1

**STATEMENT OF THE ISSUES**...................................................2

**STATEMENT REGARDING THE ADDENDUM** ........................2

**STATEMENT OF THE CASE**........................................................2

    **I. Overview of Plaintiffs' constitutional claims and Nevada's statutes and local ordinances that allow for the licensing and regulation of legal brothels in certain counties.**................................2

    **II. District court's order granting Defendants' motions to dismiss.**........7

**SUMMARY OF THE ARGUMENT** ..................................................8

**ARGUMENT** ................................................................................12

    **I. This Court should affirm the district court's order granting the motions to dismiss for lack of subject-matter jurisdiction because Plaintiffs failed to establish Article III standing.**.............................12

        **A. Standard of review.**.............................................................12

        **B. At the time of filing the original complaint and the first amended complaint, Plaintiffs did not have Article III standing.** ............12

    **II. Even assuming Plaintiffs could establish Article III standing, this Court should affirm the district court's order granting the motions to dismiss because Plaintiffs' claims for relief are barred as a matter of law.**.........................................................................19

        **A. Standard of review.**.............................................................19

**B. Plaintiffs' claims for declaratory, injunctive and monetary relief against the State of Nevada and the Legislature and Plaintiffs' claims for monetary relief against the Governor must be dismissed because those claims are not within the subject-matter jurisdiction of the federal courts under the Eleventh Amendment as a matter of law.** ...........................................................................20

**C. Plaintiffs' claims for declaratory, injunctive and monetary relief against the State of Nevada and the Legislature and Plaintiffs' claims for monetary relief against the Governor must be dismissed because Plaintiffs cannot obtain such relief under 42 U.S.C. § 1983 as a matter of law.** ..........................................................................21

**D. Plaintiffs' claims for declaratory, injunctive and monetary relief against the Legislature and Governor must be dismissed because those claims are barred by absolute legislative immunity under 42 U.S.C. § 1983 as a matter of law.** ...................................................22

**E. Plaintiffs' claims for declaratory, injunctive and monetary relief against the Legislature and Governor must be dismissed because those claims are time-barred as a matter of law under the statute of limitations applicable to 42 U.S.C. § 1983.** .................................25

**F. Plaintiffs' claims for declaratory and injunctive relief against the Governor must be dismissed because the Governor is not charged with enforcing the challenged provisions of state and local law and is therefore not a proper party-defendant under 42 U.S.C. § 1983 as a matter of law.** ............................................................................28

**G. Plaintiffs' claims for declaratory, injunctive and monetary relief must be dismissed as a matter of law because Plaintiffs have failed to join all necessary and indispensable party-defendants under FRCP 19.** ..............................................................................................30

**H. Plaintiffs' claims for declaratory, injunctive and monetary relief against all Defendants must be dismissed on their merits as a matter of law because the federal criminal laws do not preempt the challenged provisions of state and local law with regard to the licensing and regulation of legal brothels.** .....................................33

**CONCLUSION**........................................................................................41

**STATEMENT OF RELATED CASES**...................................................42

**CERTIFICATE OF COMPLIANCE FOR BRIEFS** ..........................42

**CERTIFICATE OF SERVICE FOR ELECTRONIC FILING**.......................43

**ADDENDUM** ......................................................................................A1

## TABLE OF AUTHORITIES

**CASES**

Allah v. Comm'r of Dep't Corr. Servs., 448 F.Supp. 1123 (N.D.N.Y. 1978) ........21

Allen v. Wright, 468 U.S. 737 (1984) ......................................................17

Arizona v. United States, 567 U.S. 387 (2012) ......................................34

Austin v. State Indus. Ins. Sys., 939 F.2d 676 (9th Cir. 1991)................20

Baraka v. McGreevey, 481 F.3d 187 (3d Cir. 2007) ...............................24

Biodiversity Legal Found. v. Badgley, 309 F.3d 1166 (9th Cir. 2002)...................13

Block v. North Dakota ex rel. Bd. of Univ. & School Lands,
461 U.S. 273 (1983)........................................................................25

Bogan v. New London Hous. Auth., 366 F.Supp. 861 (D. Conn. 1973)................31

Burnette v. Bredesen, 566 F.Supp.2d 738 (E.D. Tenn. 2008) .......................... 23-24

Carpinteria Valley Farms, Ltd. v. Cnty. of Santa Barbara,
344 F.3d 822 (9th Cir. 2003) ..........................................................27

Cetacean Cmty. v. Bush, 386 F.3d 1169 (9th Cir. 2004) ........................................12

Chachas v. City of Ely, 615 F.Supp.2d 1193 (D. Nev. 2009) ................................25

Chamber of Commerce v. Whiting, 563 U.S. 582 (2011)........................................35

Charleston v. Nevada, 423 F.Supp.3d 1020 (D. Nev. 2019) ......................................1

Chase Nat'l Bank v. City of Norwalk, 291 U.S. 431 (1934)...................................32

City of Garden Grove v. Superior Ct., 68 Cal.Rptr.3d 656
(Cal. Ct. App. 2007)........................................................................39

City of Los Angeles v. Lyons, 461 U.S. 95 (1983) .......................................... 15-16

iv

City of Palm Springs v. Luna Crest Inc., 200 Cal.Rptr.3d 128
(Cal. Ct. App. 2016)........................................................................ 38-39

Clark v. State of Wash., 366 F.2d 678 (9th Cir. 1966)............................31

College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,
527 U.S. 666 (1999)...........................................................................20

Confederated Tribes v. Locke, 176 F.3d 467 (9th Cir. 1999) .................29

Cope v. Anderson, 331 U.S. 461 (1947)...............................................26

CSX Transp. v. Easterwood, 507 U.S. 658 (1993)............................ 34-35

Davis v. FEC, 554 U.S. 724 (2008) .......................................................13

Deniz v. Municipality of Guaynabo, 285 F.3d 142 (1st Cir. 2002).........22

E.E.O.C. v. Peabody W. Coal Co., 610 F.3d 1070 (9th Cir. 2010).........32

Ex parte Young, 209 U.S. 123 (1908) ............................................... 28-29

Fitts v. McGhee, 172 U.S. 516 (1899).....................................................18

Franz v. E. Columbia Basin Irr. Dist., 383 F.2d 391 (9th Cir. 1967).....31

Friends of the Earth v. Laidlaw Envtl. Servs., 528 U.S. 167 (2000)... 12-13

Gilbert v. City of Cambridge, 932 F.2d 51 (1st Cir. 1991) ....................26

Gingery v. City of Glendale, 831 F.3d 1222 (9th Cir. 2016) ..................19

Gratz v. Bollinger, 539 U.S. 244 (2003)................................................15

Gregory v. Ashcroft, 501 U.S. 452 (1991) ............................................34

Grupo Dataflux v. Atlas Glob. Grp., 541 U.S. 567 (2004).....................13

Hafer v. Melo, 502 U.S. 21 (1991) ........................................................20

Hall v. Louisiana, 974 F.Supp.2d 944 (M.D. La. 2013) ...........................................23

Haro v. Sebelius, 747 F.3d 1099 (9th Cir. 2014) .....................................................13

Hein v. Freedom from Religion Found., 551 U.S. 587 (2007) .................................17

Hillsborough Cnty. v. Automated Med. Labs., 471 U.S. 707 (1985).......... 35-36, 38

Hines v. Davidowitz, 312 U.S. 52 (1941) .................................................................38

Ill. Dunesland Pres. Soc'y v. Ill. Dep't Nat. Res.,
461 F.Supp.2d 666 (N.D. Ill. 2006) .........................................................................21

Jones v. Rath Packing Co., 430 U.S. 519 (1977) .....................................................34

Kuban v. McGimsey, 605 P.2d 623 (Nev. 1980) .......................... 4-5, 18, 28, 30, 33

L.A. Branch NAACP v. L.A. Unified Sch. Dist.,
714 F.2d 946 (9th Cir. 1983) ............................................................................. 28-29

L.A. Cnty. Bar Ass'n v. Eu, 979 F.2d 697 (9th Cir. 1992).......................................29

Lake Country Estates v. Tahoe Reg'l Planning Agency,
440 U.S. 391 (1979) .................................................................................................22

Lans v. Gateway 2000, Inc., 84 F.Supp.2d 112 (D.D.C. 1999)...............................13

Larsen v. Senate of Pennsylvania, 152 F.3d 240 (3d Cir. 1998) .............................23

Levald, Inc. v. City of Palm Desert, 998 F.2d 680 (9th Cir. 1993) ................... 25-26

Long v. Van de Kamp, 961 F.2d 151 (9th Cir. 1992)........................................18, 28

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ..............................................13

Martin v. Wilks, 490 U.S. 755 (1989) ............................................................... 31-32

McCoy v. San Francisco, 14 F.3d 28 (9th Cir. 1994)..............................................26

McDougal v. County of Imperial, 942 F.2d 668 (9th Cir. 1991) ...........................26

McGuire v. United States, 152 F.2d 577 (8th Cir. 1945) ........................................36

M.S. v. Brown, 902 F.3d 1076 (9th Cir. 2018)......................................................12

Mullaney v. Anderson, 342 U.S. 415, 416-17 (1952) ............................................13

Nat'l Audubon Soc'y v. Davis, 307 F.3d 835 (9th Cir. 2002) ...............................29

Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826 (1989).............................13

Noffsinger v. SSC Niantic Oper. Co., 273 F.Supp.3d 326 (D. Conn. 2017)...........38

Nye Cnty. v. Plankinton, 587 P.2d 421 (Nev. 1978) ..............................................27

Okpalobi v. Foster, 244 F.3d 405 (5th Cir. 2001) ..................................................17

Owens v. Okure, 488 U.S. 235 (1989)....................................................................25

O'Shea v. Littleton, 414 U.S. 488 (1974)...............................................................15

Pakdel v. City of San Francisco, 952 F.3d 1157 (9th Cir. 2020) ...........................19

Perez v. Seevers, 869 F.2d 425 (9th Cir. 1989)......................................................25

Pressroom Unions-Printers League Income Sec. Fund v.
Cont'l Assur. Co., 700 F.2d 889, 893 (2d Cir. 1983) .............................................13

Quern v. Jordan, 440 U.S. 332 (1979) ...................................................................20

Quinones v. City of Evanston, 58 F.3d 275 (7th Cir. 1995)....................................18

Reed-Kaliher v. Hoggatt, 347 P.3d 136 (Ariz. 2015).............................................38

Rice v. Santa Fe Elevator Corp., 331 U.S. 218 (1947)...........................................35

Rivera Concepcion v. Puerto Rico, 682 F.Supp.2d 164 (D.P.R. 2010)............. 21-22

RK Ventures v. Seattle, 307 F.3d 1045 (9th Cir. 2002) .................................... 26-27

Rogers v. United States, 376 U.S. 188 (1964)...........................................................36

Romano v. Bible, 169 F.3d 1182 (9th Cir. 1999) ....................................................20

Russell v. Todd, 309 U.S. 280 (1940) ....................................................................26

Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208 (1974) ..............16

Schreiber Foods v. Beatrice Cheese, 402 F.3d 1198 (Fed. Cir. 2005) ...................13

Scott v. Taylor, 405 F.3d 1251 (11th Cir. 2005) ....................................................23

Shell Oil Co. v. Noel, 608 F.2d 208 (1st Cir. 1979)................................................29

Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26 (1976) ......................................17

Snoeck v. Brussa, 153 F.3d 984 (9th Cir. 1998)......................................................29

Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998)...................................15

S. Pac. Transp. Co. v. Brown, 651 F.2d 613 (9th Cir. 1980)....................... 18, 28-29

S. Utah Wilderness Alliance v. Palma, 707 F.3d 1143 (10th Cir. 2013)................13

Summers v. Earth Island Inst., 555 U.S. 488 (2009) ...............................................12

Supreme Ct. of Va. v. Consumers Union, 446 U.S. 719 (1980) ............................23

Tenney v. Brandhove, 341 U.S. 367 (1951) ............................................................22

Ter Beek v. City of Wyoming, 846 N.W.2d 531 (Mich. 2014) ...............................38

Tolman v. Finneran, 171 F.Supp.2d 31 (D. Mass. 2001) ................................. 23-24

Twitchell v. United States, 313 F.2d 425 (9th Cir. 1963) ................................. 36-37

United States v. Cannabis Cultivators Club, 5 F.Supp.2d 1086
(N.D. Cal. 1998)......................................................................................................39

United States v. Clintwood Elkhorn Mining, 553 U.S. 1 (2008) ...........................25

United States v. Locke, 529 U.S. 89 (2000) ........................................................34

United States v. Maldonado-Burgos, 844 F.3d 339 (1st Cir. 2016) .......................36

United States v. McConney, 329 F.2d 467 (2d Cir. 1964) .....................................36

Wallace v. Kato, 549 U.S. 384 (2007)...................................................................26

Warden v. Pataki, 35 F.Supp.2d 354 (S.D.N.Y. 1999).........................................24

Warth v. Seldin, 422 U.S. 490 (1975) ...................................................................16

White v. Lee, 227 F.3d 1214 (9th Cir. 2000)..........................................................13

Will v. Mich. Dep't State Police, 491 U.S. 58 (1989).............................................21

Wilson v. Garcia, 471 U.S. 261, 279-80 (1985) .....................................................25

Women's Emer. Net. v. Bush, 323 F.3d 937 (11th Cir. 2003)...............................29

Wyeth v. Levine, 555 U.S. 555 (2009) ...................................................................35

Zurich Ins. v. Logitrans, Inc., 297 F.3d 528 (6th Cir. 2002) .................................13

## UNITED STATES CONSTITUTION

U.S. Const. art. III ..............................................................................passim

U.S. Const. art. VI, cl. 2 (Supremacy Clause) ...................................passim

U.S. Const. amend. 11.........................................................................passim

U.S. Const. amend. 14 (Due Process Clause)................................... 31-33

## UNITED STATES CODE

18 U.S.C. § 1591(a) ................................................................5, 35

18 U.S.C. § 2422(a) ................................................................5, 36

22 U.S.C. §§ 7101-7114 ..........................................................5, 36

28 U.S.C. § 1331 .........................................................................1

28 U.S.C. § 1343(a)(3) ................................................................1

42 U.S.C. § 1983 ...................................................................passim

## CIRCUIT RULES

Cir. R. 28-2.7 ..............................................................................2

## FEDERAL RULES OF CIVIL PROCEDURE

FRCP 12 ..............................................................................passim

FRCP 15 ......................................................................................2

FRCP 19 ..............................................................................passim

## NEVADA REVISED STATUTES (NRS)

NRS 201.354 ........................................................................passim

NRS 218F.720 .............................................................................1

NRS 244.345 ........................................................................passim

**NEVADA LEGISLATION**

1971 Nev. Stat., ch. 14, § 1, at 11-13 (enacting NRS 244.345(8)).........................27

1987 Nev. Stat., ch. 762, § 2, at 2027 (enacting NRS 201.354(1)) ........................27

Assembly Concurrent Resolution No. 6, 2019 Nev. Stat.,
File No. 47, at 4640................................................................................................ 3-4

**INTRODUCTION**

The Nevada Legislature (Legislature), by and through its counsel the Legal Division of the Legislative Counsel Bureau (LCB) under Nevada Revised Statutes (NRS) 218F.720, hereby files its answering brief. The Legislature asks this Court to affirm the district court's order granting the motions to dismiss for lack of subject-matter jurisdiction because Plaintiffs failed to establish Article III standing. Charleston v. Nevada, 423 F.Supp.3d 1020 (D. Nev. 2019). Furthermore, even assuming Plaintiffs could establish Article III standing, the Legislature asks this Court to affirm the district court's order granting the motions to dismiss because Plaintiffs' claims for relief are barred as a matter of law.

**STATEMENT OF JURISDICTION**

The district court did not have subject-matter jurisdiction under the federal jurisdictional statutes in 28 U.S.C. § 1331 or 28 U.S.C. § 1343(a)(3) because Plaintiffs failed to establish Article III standing to bring their claims in the federal courts. In addition, the district court did not have subject-matter jurisdiction under those federal jurisdictional statutes because Plaintiffs' claims for declaratory, injunctive and monetary relief against the State of Nevada and the Legislature and Plaintiffs' claims for monetary relief against the Governor are not within the subject-matter jurisdiction of the federal courts under the Eleventh Amendment to the United States Constitution.

1

## STATEMENT OF THE ISSUES

1.    Should this Court affirm the district court's order granting the motions to dismiss for lack of subject-matter jurisdiction because Plaintiffs failed to establish Article III standing?

2.    Even assuming Plaintiffs could establish Article III standing, should this Court affirm the district court's order granting the motions to dismiss because Plaintiffs' claims for relief are barred as a matter of law?

## STATEMENT REGARDING THE ADDENDUM

Pursuant to Cir. R. 28-2.7, the pertinent statutory provisions involved in this appeal are set forth verbatim and with appropriate citations in the addendum bound with this brief.

## STATEMENT OF THE CASE

**I.  Overview of Plaintiffs' constitutional claims and Nevada's statutes and local ordinances that allow for the licensing and regulation of legal brothels in certain counties.**

On February 25, 2019, Plaintiff Rebekah Charleston filed the original complaint in the district court.  (*SER0001*.)[1]  On March 18, 2019, Charleston filed a first amended complaint in the district court under FRCP 15(a)(1), which allows a party to amend its pleading once as a matter of course without the consent of the

---

[1] The original complaint is included in the Legislature's Supplemental Excerpts of Record (SER) filed with this brief.

opposing parties or leave of the court.  (*ER0011.*)[2]  The first amended complaint added Angela Delgado-Williams and Leah Albright-Byrd as additional Plaintiffs. (*ER0011-13.*)

In their first amended complaint, Plaintiffs pleaded federal constitutional claims under 42 U.S.C. § 1983 (section 1983) for alleged violations of their civil rights committed by Defendants—the State of Nevada; Steve Sisolak in his official capacity as the Governor of the State of Nevada (Governor); and the Legislature in its official capacity as the legislative authority of the State of Nevada.  (*ER0012-13.*)  As their basis for subject-matter jurisdiction, Plaintiffs asserted federal-question jurisdiction under 28 U.S.C. § 1331 and federal civil-rights jurisdiction under 28 U.S.C. § 1343(a)(3).  (*ER0012.*)

Plaintiffs challenged the constitutionality of Nevada's statutes and local ordinances that allow for the licensing and regulation of legal brothels in certain less populated counties in Nevada.  (*ER0045-49.*)  Nevada's statutes give each county whose population is less than 700,000 the local option of enacting county ordinances that allow businesses to operate "a licensed house of prostitution." NRS 201.354(1) & 244.345(8).  Such businesses are more commonly known as legal brothels or licensed brothels.  See, e.g., Assembly Concurrent Resolution

---

[2] The first amended complaint is included in Plaintiffs' Excerpts of Record (ER) filed with their opening brief.

No. 6, 2019 Nev. Stat., File No. 47, at 4640 (providing for an interim legislative study concerning the health and well-being of workers at "licensed brothels").

Thus, although state law gives certain Nevada counties the local option to license and regulate legal brothels, such licensing and regulation can occur only if those counties first pass county ordinances to do so. Kuban v. McGimsey, 605 P.2d 623, 625-26 (Nev. 1980) (explaining that where state law gives Nevada counties the local option to license and regulate legal brothels, "the regulation of brothels is a matter of local concern."). Plaintiffs alleged that seven Nevada counties have enacted county ordinances that license and regulate legal brothels, including Elko, Lander, Lyon, Mineral, Nye, Storey and White Pine. (*ER0016.*) However, in both the district court and this Court, Plaintiffs have not provided any citations to or verbatim copies of the county ordinances that they claim are unconstitutional. (*ER0011, 0049 & 0882-83*; *Opening Br. 22 & 34.*)

Because Nevada's statutes give the applicable counties the local option to license and regulate legal brothels—thereby making "the regulation of brothels [in Nevada] a matter of local concern"—the Legislature and Governor are not charged with enforcing the challenged provisions of state and local law, and they do not license and regulate legal brothels in carrying out their official duties. Kuban, 605 P.2d at 625-26. Instead, the power to enforce the challenged provisions of state and local law and license and regulate legal brothels belongs exclusively to the

proper local officials in the counties that license and regulate legal brothels. Id. at 625-26 ("The legislature has specifically provided that the board of county commissioners has the power to license, regulate or suppress brothels in unincorporated cities or towns.").

In their constitutional claims, Plaintiffs alleged that the challenged provisions of state and local law are preempted by federal law under the Supremacy Clause of the Federal Constitution. U.S. Const. art. VI, cl. 2. To support their federal preemption claims, Plaintiffs relied on several federal criminal laws that prohibit a person from engaging in certain unlawful conduct which involves travel or other acts in or affecting interstate or foreign commerce and which relates to illegal prostitution or sex trafficking. 18 U.S.C. § 1591(a); 18 U.S.C. § 2422(a); 22 U.S.C. §§ 7101-7114.

Plaintiffs claimed that these federal criminal laws preempt Nevada's statutes and local ordinances licensing and regulating legal brothels based on their contention that permitting the operation of legal brothels is in direct conflict with the congressional intent underlying these federal criminal laws to: (1) "prevent persons from persuading, inducing, enticing, and/or coercing any person to travel across state lines to engage in prostitution"; and (2) "ensure just and effective punishment of traffickers and to protect their victims." (*ER0047-48.*) In particular, Plaintiffs claimed that:

> Because the brothel industry in Nevada openly and notoriously persuades, induces, entices, and coerces individuals to travel in interstate commerce to commit acts of prostitution, [Nevada's statutes and local ordinances licensing and regulating legal brothels] cannot exist simultaneously with [the federal criminal laws] and thereby [are] preempted and in violation of the Supremacy Clause of the U.S. Constitution.

(*ER0048-49.*)

In their prayer for relief, Plaintiffs asked for a declaratory judgment that Nevada's statutes and local ordinances licensing and regulating legal brothels are "unconstitutional [and] null and void as preempted by federal law," and a preliminary and permanent injunction "prohibiting the State of Nevada and all of its political subdivisions from implementing, enforcing, or putting into force and effect" Nevada's statutes and local ordinances licensing and regulating legal brothels. (*ER0049.*) Plaintiffs also asked for an order requiring the State of Nevada to allocate funds in an amount not less than $2,000,000 per year to the State Contingency Account for deposit to a special fund, designated as the "Nevada Sex Trade Exit Fund," to be used specifically to assist persons seeking to exit the sex trade, including, without limitation, providing mental health services, rent assistance, job training, scholarships, funding for childcare, medical treatments, tattoo removal and other assistance. (*ER0049.*) Plaintiffs additionally asked that the order: (1) require all persons requesting money from the Nevada Sex Trade Exit Fund to provide proof of having been prostituted in Nevada through

legal brothels as a result of the enactment of Nevada's statutes and local ordinances licensing and regulating legal brothels; and (2) prohibit any person who was ever in brothel ownership or brothel management from receiving money from the Nevada Sex Trade Exit Fund.  (*ER0049.*)  Finally, Plaintiffs asked that the order require the Nevada Sex Trade Exit Fund to remain funded and running for 10 years from the date of the order declaring that Nevada's statutes and local ordinances licensing and regulating legal brothels are preempted by federal law.  (*ER0049.*)

## II.    District court's order granting Defendants' motions to dismiss.

The Legislature filed a motion to dismiss the first amended complaint for lack of subject-matter jurisdiction under FRCP 12(b)(1) and 12(h)(3), for failure to state a claim upon which relief can be granted under FRCP 12(b)(6), and for failure to join all necessary and indispensable party-defendants under FRCP 12(b)(6) and 19. (*ER0318-41.*)  The State of Nevada and the Governor also filed a motion to dismiss the first amended complaint.  (*ER0301a-316.*)

The district court granted the motions to dismiss for lack of subject-matter jurisdiction because the district court found that Plaintiffs failed to establish Article III standing for subject-matter jurisdiction.  (*ER0005-9.*)  The district court also noted that "the Eleventh Amendment precludes suit against the State and Legislature absent waiver," and that "[t]he Eleventh Amendment also bars claims for damages against a state official—like the Governor here—as such claims are

essentially against the state." (*ER0009*.)  Finally, the district court did not "address any other grounds upon which Defendants sought dismissal." (*ER0009*.)

## SUMMARY OF THE ARGUMENT

This Court should affirm the district court's order granting the motions to dismiss for lack of subject-matter jurisdiction because at the time of filing the original complaint and the first amended complaint, Plaintiffs did not have Article III standing.  Plaintiffs failed to plead any allegations from which the district court could conclude that they presently face any personal threat of actual or imminent harm from application or enforcement of the challenged provisions in Nevada.  In the absence of such allegations, Plaintiffs cannot establish Article III standing as a matter of law.

In addition, Plaintiffs cannot establish Article III standing because they did not name the proper party-defendants who are charged with enforcing the challenged provisions of state and local law.  The named Defendants in this case— the Legislature and the Governor—are not charged with enforcing the challenged provisions of state law, and they are not charged with enforcing the county ordinances which implement that state law and actually license and regulate legal brothels.  The power to enforce the challenged provisions of state and local law belongs exclusively to the proper local officials in the counties that license and regulate legal brothels.  Given that Plaintiffs did not sue the proper local officials

in those counties as the necessary and indispensable party-defendants, Article III standing is lacking because Plaintiffs' alleged injuries are not traceable to the named Defendants and therefore are not redressable by the court.

Finally, this Court may affirm the district court's dismissal order on any grounds supported by the record, whether or not the district court relied on those grounds in dismissing Plaintiffs' claims. Therefore, even assuming Plaintiffs could establish Article III standing, this Court should affirm the district court's order granting the motions to dismiss because Plaintiffs' claims for relief are barred as a matter of law on many additional grounds.

First, Plaintiffs' claims for declaratory, injunctive and monetary relief against the State of Nevada and the Legislature and Plaintiffs' claims for monetary relief against the Governor are not within the subject-matter jurisdiction of the federal courts under the Eleventh Amendment and must be dismissed for lack of subject-matter jurisdiction as a matter of law.

Second, Plaintiffs' claims for declaratory, injunctive and monetary relief against the State of Nevada and the Legislature and Plaintiffs' claims for monetary relief against the Governor must be dismissed because Plaintiffs cannot obtain such relief under 42 U.S.C. § 1983 as a matter of law.

Third, Plaintiffs' claims for declaratory, injunctive and monetary relief against the Legislature and the Governor must be dismissed because those claims

9

are barred by the doctrine of absolute legislative immunity under 42 U.S.C. § 1983 as a matter of law.

Fourth, Plaintiffs' claims for declaratory, injunctive and monetary relief against the Legislature and the Governor must be dismissed because those claims are time-barred as a matter of law under the statute of limitations applicable to 42 U.S.C. § 1983.

Fifth, Plaintiffs' claims for declaratory and injunctive relief against the Governor must be dismissed because the Governor is not charged with enforcing the challenged provisions of state and local law and is therefore not a proper party-defendant under 42 U.S.C. § 1983 as a matter of law.

Sixth, because the Legislature and the Governor are not the proper party-defendants to represent and protect the interests of Nevada's counties in the validity of their own local ordinances, Plaintiffs' claims for declaratory, injunctive and monetary relief must be dismissed as a matter of law because Plaintiffs have failed to join all necessary and indispensable party-defendants under FRCP 19.

Seventh, Plaintiffs' claims for declaratory, injunctive and monetary relief against all Defendants must be dismissed on their merits as a matter of law because the federal criminal laws do not preempt the challenged provisions of state and local law with regard to the licensing and regulation of legal brothels. The challenged provisions do not exempt any illegal activity from prosecution under

federal law, and the challenged provisions do not purport to make or declare any conduct legal that is otherwise prohibited by federal law. Indeed, because the federal criminal laws do not prohibit the act of prostitution or the operation of a house of prostitution occurring wholly within a single state, the challenged provisions do not conflict with the federal criminal laws in any way at all.

As a result, the challenged provisions establish a state and local regulatory scheme that limits state prosecution for certain acts of prostitution occurring wholly within Nevada but does not limit enforcement of the federal criminal laws in any way at all. Because this state and local regulatory scheme does not implicate federal supremacy concerns, Plaintiffs cannot clearly show a conflict between the challenged provisions of state and local law and the federal criminal laws that is strong enough to overcome the presumption that the state and local regulatory scheme can constitutionally coexist with the federal regulatory scheme.

For all these reasons, the Legislature asks this Court to affirm the district court's order granting the motions to dismiss.

//

//

//

//

//

11

## ARGUMENT

**I. This Court should affirm the district court's order granting the motions to dismiss for lack of subject-matter jurisdiction because Plaintiffs failed to establish Article III standing.**

### A. Standard of review.

This Court reviews de novo whether the district court correctly granted the motions to dismiss for lack of subject-matter jurisdiction because Plaintiffs failed to establish Article III standing. M.S. v. Brown, 902 F.3d 1076, 1082 (9th Cir. 2018).

### B. At the time of filing the original complaint and the first amended complaint, Plaintiffs did not have Article III standing.

Under FRCP 12(b)(1) and 12(h)(3), the district court must dismiss claims for relief when it lacks subject-matter jurisdiction to adjudicate those claims. Because Article III standing is a prerequisite to subject-matter jurisdiction, the district court must dismiss claims when a plaintiff lacks Article III standing to bring the claims. Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004). To establish Article III standing to bring claims for declaratory and injunctive relief:

> [A] plaintiff must show that he is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) (quoting Friends of the Earth v. Laidlaw Envtl. Servs., 528 U.S. 167, 180-81 (2000)).

12

Furthermore, under the time-of-filing rule, the district court must determine whether there is standing based on the facts and parties as they existed when the original complaint was filed.[3] <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 570 n.5 (1992); <u>Davis v. FEC</u>, 554 U.S. 724, 734 (2008); <u>Friends of the Earth</u>, 528 U.S. at 189; <u>Haro v. Sebelius</u>, 747 F.3d 1099, 1108 (9th Cir. 2014); <u>Biodiversity Legal Found. v. Badgley</u>, 309 F.3d 1166, 1171 (9th Cir. 2002); <u>White v. Lee</u>, 227 F.3d 1214, 1243 (9th Cir. 2000). The time-of-filing rule applies even if the complaint is later amended. <u>Schreiber Foods v. Beatrice Cheese</u>, 402 F.3d 1198, 1203 n.3 (Fed. Cir. 2005); <u>S. Utah Wilderness Alliance v. Palma</u>, 707 F.3d 1143, 1152-53 (10th Cir. 2013). If the original plaintiff lacks standing at the time of filing the original complaint, the original plaintiff cannot add new plaintiffs to the case in an attempt to retroactively cure the lack of standing. <u>Lujan</u>, 504 U.S. at 569-70 n.4; <u>Schreiber Foods</u>, 402 F.3d at 1203; <u>Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assur. Co.</u>, 700 F.2d 889, 893 (2d Cir. 1983); <u>Zurich Ins. v. Logitrans, Inc.</u>, 297 F.3d 528, 531 (6th Cir. 2002); <u>Lans v. Gateway 2000, Inc.</u>, 84 F.Supp.2d 112, 115 (D.D.C. 1999).

---

[3] The federal courts may recognize exceptions to the time-of-filing rule only in rare and extraordinary circumstances that are not present in this case. <u>See</u> <u>Grupo Dataflux v. Atlas Glob. Grp.</u>, 541 U.S. 567, 570-82 (2004); <u>Newman-Green, Inc. v. Alfonzo-Larrain</u>, 490 U.S. 826, 832-38 (1989); <u>Mullaney v. Anderson</u>, 342 U.S. 415, 416-17 (1952).

In this case, Plaintiff Charleston was the only Plaintiff at the time of filing the original complaint. (*SER0001-2.*) Therefore, she was required to have Article III standing at that time to establish subject-matter jurisdiction. When Charleston filed the original complaint, she alleged that she resided in Texas, but she did not allege any presently existing personal contacts or connection with Nevada. (*SER0002 & 0019-20.*) Although Charleston alleged in the original complaint that she is a former victim of sex trafficking who was forced to engage in illegal prostitution in Nevada, she did not allege in the original complaint that she presently faces any personal threat from illegal prostitution or sex trafficking crimes in Nevada. (*SER0002 & 0019-20.*) Therefore, given that Charleston is not a resident of Nevada, did not allege any presently existing personal contacts or connection with Nevada, and did not allege any presently existing personal threat from illegal prostitution or sex trafficking crimes in Nevada, Charleston failed to plead any allegations in the original complaint from which the district court could conclude that she presently faces any personal threat of actual or imminent harm from application or enforcement of the challenged provisions in Nevada. In the absence of such allegations in the original complaint, Charleston cannot establish Article III standing for declaratory and injunctive relief against all Defendants as a matter of law.

For purposes of Article III standing, it is well established that Charleston's "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief," unless she also shows that she presently faces personal threat of actual or imminent harm from application or enforcement of the challenged provisions in Nevada. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 109 (1998) (quoting O'Shea v. Littleton, 414 U.S. 488, 496-97 (1974)). Moreover, even though Charleston alleged that she suffered severe and dehumanizing emotional consequences from past exposure to illegal conduct when she was allegedly forced to engage in illegal prostitution in Nevada, "[t]he emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant." City of Los Angeles v. Lyons, 461 U.S. 95, 107 n.8 (1983).

Additionally, because Charleston failed to plead any allegations in the original complaint from which the district court could conclude that she presently faces any personal threat of actual or imminent harm from application or enforcement of the challenged provisions in Nevada, Charleston's "past injuries do not give [her] standing to obtain injunctive relief to protect third parties from similar harms." Gratz v. Bollinger, 539 U.S. 244, 284 (2003). The reason for this rule is that "[t]he Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment

15

may benefit others collaterally." Warth v. Seldin, 422 U.S. 490, 499 (1975). Thus, it is well established that "standing to sue may not be predicated upon an interest of the kind alleged here which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share." Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 220 (1974). As a result, "when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." Warth, 422 U.S. at 499 (quoting Schlesinger, 418 U.S. at 217). In other words, "a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of [state or local] officers are unconstitutional." Lyons, 461 U.S. at 111.

As a resident of Texas, Charleston has, at most, a generalized interest or grievance regarding the application or enforcement of the challenged provisions in Nevada. Although Charleston alleged past injuries in the original complaint, she did not allege that she presently faces any personal threat of actual or imminent harm from application or enforcement of the challenged provisions in Nevada. (*SER0002 & 0019-20.*) In the absence of such allegations in the original complaint, Charleston did not have Article III standing for declaratory and injunctive relief against all Defendants when she filed the original complaint.

Further, Charleston did not have Article III standing when she filed the original complaint because she did not name the proper party-defendants who are charged with enforcing the challenged provisions of state and local law. For purposes of Article III standing, a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Hein v. Freedom from Religion Found., 551 U.S. 587, 598 (2007) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)). As a result, Article III standing requires a plaintiff to show that the defendant is the proper party who can provide the requested relief. Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976) ("Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court."); Okpalobi v. Foster, 244 F.3d 405, 426 (5th Cir. 2001) (en banc) ("[A] plaintiff may not sue a state official who is without any power to enforce the complained-of statute."). If the defendant is not the proper party who can provide the requested relief, Article III standing is lacking because the plaintiff's alleged injury would not be traceable to the defendant or redressable by the court. Simon, 426 U.S. at 41-42; Okpalobi, 244 F.3d at 426-29.

In cases where the constitutionality of a statute or rule is at issue, it is well established that "[a] person aggrieved by the application of a legal rule does not

sue the rule *maker*—Congress, the President, the United States, a state, a state's legislature, the judge who announced the principle of common law." Quinones v. City of Evanston, 58 F.3d 275, 277 (7th Cir. 1995). Instead, the aggrieved person must sue the public officer charged with enforcing the statute or rule whose actions or threatened actions are allegedly causing the harm. See Fitts v. McGhee, 172 U.S. 516, 529-30 (1899); Long v. Van de Kamp, 961 F.2d 151, 152 (9th Cir. 1992); S. Pac. Transp. Co. v. Brown, 651 F.2d 613, 615 (9th Cir. 1980).

In this case, the Legislature and Governor are not charged with enforcing the challenged provisions of state law that give certain Nevada counties the local option to license and regulate legal brothels, and they are not charged with enforcing the county ordinances which implement that state law and actually license and regulate legal brothels. The power to enforce the challenged provisions of state and local law belongs exclusively to the proper local officials in the counties that license and regulate legal brothels. Kuban, 605 P.2d at 625-26 ("The legislature has specifically provided that the board of county commissioners has the power to license, regulate or suppress brothels in unincorporated cities or towns."). Consequently, because Charleston did not sue the proper local officials in the counties that license and regulate legal brothels at the time of filing the original complaint, she did not name the proper party-defendants when she filed

18

the original complaint, and she lacked Article III standing to bring claims for declaratory and injunctive relief.

Furthermore, for the same reasons that Charleston lacked Article III standing to bring claims for declaratory and injunctive relief when the original complaint was filed, the other Plaintiffs—Delgado-Williams and Albright-Byrd—also lacked Article III standing to bring claims for declaratory and injunctive relief when the first amended complaint was filed. As a result, this Court should affirm the district court's order granting the motions to dismiss for lack of subject-matter jurisdiction because Plaintiffs failed to establish Article III standing.

**II.  Even assuming Plaintiffs could establish Article III standing, this Court should affirm the district court's order granting the motions to dismiss because Plaintiffs' claims for relief are barred as a matter of law.**

**A.  Standard of review.**

This Court reviews de novo whether Plaintiffs' claims for relief are barred as a matter of law, and this Court may affirm the district court's dismissal order on any grounds supported by the record, whether or not the district court relied on those grounds in dismissing Plaintiffs' claims. Gingery v. City of Glendale, 831 F.3d 1222, 1226 (9th Cir. 2016); Pakdel v. City of San Francisco, 952 F.3d 1157, 1163 (9th Cir. 2020).

//

//

19

**B.   Plaintiffs' claims for declaratory, injunctive and monetary relief against the State of Nevada and the Legislature and Plaintiffs' claims for monetary relief against the Governor must be dismissed because those claims are not within the subject-matter jurisdiction of the federal courts under the Eleventh Amendment as a matter of law.**

The Eleventh Amendment prohibits the federal courts from exercising subject-matter jurisdiction over federal claims that seek any type of relief against the State and its agencies—including the Legislature—and federal claims that seek monetary relief against state officials acting in their official capacity, unless the State has expressly waived its Eleventh Amendment immunity or Congress has expressly abrogated such immunity pursuant to its power under section 5 of the Fourteenth Amendment.  College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 668-70 (1999); Romano v. Bible, 169 F.3d 1182, 1185-86 (9th Cir. 1999).   Nevada has not waived its Eleventh Amendment immunity.  NRS 41.031(3); Austin v. State Indus. Ins. Sys., 939 F.2d 676, 677 (9th Cir. 1991).  Nor has Congress abrogated such immunity for section 1983 claims. Quern v. Jordan, 440 U.S. 332, 345 (1979), *overruled on other grounds by* Hafer v. Melo, 502 U.S. 21, 27 (1991).  Consequently, Plaintiffs' claims for declaratory, injunctive and monetary relief against the State of Nevada and the Legislature and Plaintiffs' claims for monetary relief against the Governor are not within the subject-matter jurisdiction of the federal courts under the Eleventh Amendment and must be dismissed for lack of subject-matter jurisdiction as a matter of law.

**C.  Plaintiffs' claims for declaratory, injunctive and monetary relief against the State of Nevada and the Legislature and Plaintiffs' claims for monetary relief against the Governor must be dismissed because Plaintiffs cannot obtain such relief under 42 U.S.C. § 1983 as a matter of law.**

Plaintiffs brought claims under the federal civil rights statute in section 1983. (*ER0045-49.*)  Under section 1983, the State and its agencies—including the Legislature—are not "persons" subject to a civil rights action under section 1983. Will v. Mich. Dep't State Police, 491 U.S. 58, 62-71 (1989).  Therefore, Plaintiffs cannot obtain any type of relief against the State and its agencies under section 1983, including declaratory, injunctive and monetary relief.  Allah v. Comm'r of Dep't Corr. Servs., 448 F.Supp. 1123, 1125 (N.D.N.Y. 1978) ("It is well established that state agencies are not 'persons' for purposes of the Civil Rights Acts. This is true whether the relief being sought is injunctive and declaratory relief or damages."); Ill. Dunesland Pres. Soc'y v. Ill. Dep't Nat. Res., 461 F.Supp.2d 666, 671 (N.D. Ill. 2006) ("[T]here is no support for the proposition that claims for injunctive relief may be brought under § 1983 against state agencies."). In addition, Plaintiffs cannot obtain monetary relief against state officials acting in their official capacity under section 1983.  Will, 491 U.S. at 71 & n.10.

For example, in Rivera Concepcion v. Puerto Rico, 682 F.Supp.2d 164, 172 (D.P.R. 2010), the plaintiff brought claims under section 1983 against the Commonwealth of Puerto Rico and its Legislative Assembly and claims under section 1983 for monetary relief against Jose Aponte and Kenneth McClintock in

21

their official capacity as presiding officers of each legislative house. The district

court dismissed all claims under section 1983 against these defendants, stating that:

> The law is clear, however, that neither the Senate nor the Legislative
> Assembly, nor any agency or official representing the Commonwealth of
> Puerto Rico may be considered a person pursuant to section 1983 for the
> purposes of liability. Plaintiffs' section 1983 claims against the
> Commonwealth of Puerto Rico, the Legislative Assembly and all other
> branches of the Commonwealth of Puerto Rico, and both Jose Aponte
> and Kenneth McClintock in their official capacities are hereby
> **DISMISSED WITH PREJUDICE.**

Id. at 172; see also Deniz v. Municipality of Guaynabo, 285 F.3d 142, 146 (1st Cir.

2002) ("For section 1983 purposes, Puerto Rico is deemed equivalent to a state.").

Therefore, Plaintiffs' claims for declaratory, injunctive and monetary relief against

the State of Nevada and the Legislature and Plaintiffs' claims for monetary relief

against the Governor must be dismissed because Plaintiffs cannot obtain such relief

under 42 U.S.C. § 1983 as a matter of law.

**D. Plaintiffs' claims for declaratory, injunctive and monetary relief against the Legislature and Governor must be dismissed because those claims are barred by absolute legislative immunity under 42 U.S.C. § 1983 as a matter of law.**

The federal common law provides state legislators with absolute legislative

immunity in federal court for any civil claims arising from acts that fall within the

sphere of legitimate legislative activity. Tenney v. Brandhove, 341 U.S. 367, 372-

76 (1951); Lake Country Estates v. Tahoe Reg'l Planning Agency, 440 U.S. 391,

403-06 (1979). Under absolute legislative immunity, state legislators are protected

in federal court from having to defend themselves against civil claims challenging actions taken by them in their official legislative capacity, regardless of whether those claims seek monetary relief or declaratory and injunctive relief. Supreme Ct. of Va. v. Consumers Union, 446 U.S. 719, 731-34 (1980); Scott v. Taylor, 405 F.3d 1251, 1253-56 (11th Cir. 2005); Larsen v. Senate of Pennsylvania, 152 F.3d 240, 252-54 (3d Cir. 1998).

Thus, based on absolute legislative immunity, a plaintiff cannot bring a section 1983 claim against a state legislature or its committees or members for enacting state laws or for failing to amend or repeal state laws, even if the state laws violate the Federal Constitution. Consumers Union, 446 U.S. at 733-34 (finding "little doubt" that if a state legislature enacted an invalid law under the Federal Constitution and if any section 1983 claims were brought against the state legislature or its committees or members for refusing to amend or repeal the law, absolute legislative immunity would require dismissal of the claims); Hall v. Louisiana, 974 F.Supp.2d 944, 954 (M.D. La. 2013) ("It is well established that state legislatures acting within the scope of their legislative duties are immune from civil suits for damages."); Burnette v. Bredesen, 566 F.Supp.2d 738, 744-45 (E.D. Tenn. 2008) (holding that absolute legislative immunity barred section 1983 claims against a state legislature and its members for enacting state laws); Tolman v. Finneran, 171 F.Supp.2d 31, 35-36 (D. Mass. 2001) (stating that "if the sole

23

basis for a § 1983 action is the failure to pass legislation, legislative immunity would foreclose suit."); Warden v. Pataki, 35 F.Supp.2d 354, 358 (S.D.N.Y. 1999) ("The well-settled doctrine of absolute legislative immunity, however, bars actions against legislators or governors—and, *a fortiori,* legislatures—on the basis of their roles in enacting or signing legislation."). Further, under absolute legislative immunity, a plaintiff cannot bring a section 1983 claim against a state legislature or its committees or members to require the appropriation or distribution of public funds. Tolman, 171 F.Supp.2d at 35-36. Finally, absolute legislative immunity also protects a state's governor when the governor is performing acts that fall within the sphere of legitimate legislative activity, such as sponsoring, advocating for, signing or vetoing legislation. Baraka v. McGreevey, 481 F.3d 187, 196 (3d Cir. 2007) ("[W]hen a governor and a governor's appointee advocate bills to the legislature, they act in a legislative capacity."); Burnette, 566 F.Supp.2d at 744-45.

In this case, Plaintiffs' claims for declaratory, injunctive and monetary relief are all based on the enactment of the challenged provisions of state law—NRS 201.354(1) and 244.345(8)—which give certain Nevada counties the local option to license and regulate legal brothels. (*ER0013 & 0045-49.*) However, based on absolute legislative immunity, Plaintiffs cannot bring such claims against the Legislature and Governor. Therefore, Plaintiffs' claims for declaratory, injunctive and monetary relief against the Legislature and Governor must be

24

dismissed because those claims are barred by absolute legislative immunity under

42 U.S.C. § 1983 as a matter of law.

**E. Plaintiffs' claims for declaratory, injunctive and monetary relief against the Legislature and Governor must be dismissed because those claims are time-barred as a matter of law under the statute of limitations applicable to 42 U.S.C. § 1983.**

The statute of limitations applies to constitutional claims, and "[a] constitutional claim can become time-barred just as any other claim can." Block v. North Dakota ex rel. Bd. of Univ. & School Lands, 461 U.S. 273, 292 (1983); United States v. Clintwood Elkhorn Mining, 553 U.S. 1, 9 (2008). The section 1983 statute of limitations is calculated by using the statute of limitations for personal injury actions in the state where the claims arose. Wilson v. Garcia, 471 U.S. 261, 279-80 (1985); Owens v. Okure, 488 U.S. 235, 236 (1989). In Nevada, based on the statute of limitations for personal injury actions in NRS 11.190(4)(e), the section 1983 statute of limitations is two years. Perez v. Seevers, 869 F.2d 425, 426 (9th Cir. 1989); Chachas v. City of Ely, 615 F.Supp.2d 1193, 1202-03 (D. Nev. 2009). The section 1983 statute of limitations applies to both legal claims for monetary relief and equitable claims for declaratory and injunctive relief because "where legal and equitable claims coexist, equitable remedies will be withheld if an applicable statute of limitations bars the concurrent legal remedy." Levald, Inc.

v. City of Palm Desert, 998 F.2d 680, 688 (9th Cir. 1993) (quoting Gilbert v. City of Cambridge, 932 F.2d 51, 57 (1st Cir. 1991)).[4]

The section 1983 statute of limitations begins to run when a plaintiff has a complete and present cause of action and can file suit to obtain relief. Wallace v. Kato, 549 U.S. 384, 388 (2007). This occurs when a plaintiff knows or has reason to know of the alleged events that form the basis of the cause of action. McCoy v. San Francisco, 14 F.3d 28, 29 (9th Cir. 1994). Courts apply this rule of accrual strictly, even if the alleged constitutional violation creates lasting effects that continue to adversely impact a plaintiff long after the violation has occurred. Id. at 30 ("[S]tatute of limitations period is triggered by the decision constituting the discriminatory act and not by the consequences of that act."). Thus, continuing impact from past violations does not extend the statute of limitations. McDougal v. County of Imperial, 942 F.2d 668, 674-75 (9th Cir. 1991). As a result, courts must look solely to when the operative governmental action or decision occurred to trigger the statute of limitations, and they must disregard any continuing harmful effects or consequences produced by the operative action or decision because those continuing harmful effects or consequences are not separately actionable. RK

_____

[4] See also Cope v. Anderson, 331 U.S. 461, 464 (1947) ("[E]quity will withhold its relief in such a case where the applicable statute of limitations would bar the concurrent legal remedy."); Russell v. Todd, 309 U.S. 280, 289 (1940) ("[E]quity will withhold its remedy if the legal right is barred by the local statute of limitations.").

Ventures v. Seattle, 307 F.3d 1045, 1058-61 (9th Cir. 2002); Carpinteria Valley Farms, Ltd. v. Cnty. of Santa Barbara, 344 F.3d 822, 828-29 (9th Cir. 2003).

In Plaintiffs' first amended complaint, the only operative governmental action or decision alleged against the Legislature is the enactment of the challenged provisions of state law—NRS 201.354(1) and 244.345(8)—which give certain Nevada counties the local option to license and regulate legal brothels.[5] (*ER0013 & 0045-49.*) The Legislature first enacted the challenged provisions of NRS 244.345(8) in 1971, and it first enacted the challenged provisions of NRS 201.354(1) in 1987, long before the two-year limitations period immediately preceding the filing of the original complaint on February 25, 2019. See 1971 Nev. Stat., ch. 14, § 1, at 11-13 (enacting NRS 244.345(8)); 1987 Nev. Stat., ch. 762, § 2, at 2027 (enacting NRS 201.354(1)); Nye Cnty. v. Plankinton, 587 P.2d 421, 423 (Nev. 1978) (deciding in 1978 that Nevada's local licensing scheme for legal brothels "repeals the common law rule that a house of prostitution constitutes a nuisance per se.").

Further, although Plaintiffs allege past injuries from enforcement of the challenged provisions of state law and the county ordinances which implement that state law and actually license and regulate legal brothels, the Legislature and

---

[5] With regard to the Governor, Plaintiffs do not allege any operative governmental action or decision by the Governor. Instead, Plaintiffs allege only that the Governor "is named in this lawsuit in his official capacity only." (*ER0013.*)

Governor are not charged with enforcing the challenged provisions of state and local law, and they do not license and regulate legal brothels. The power to enforce the challenged provisions of state and local law and license and regulate legal brothels belongs exclusively to the proper local officials in the counties that license and regulate legal brothels. Kuban, 605 P.2d at 625-26. Therefore, with regard to the Legislature and Governor, Plaintiffs have not alleged any operative governmental action or decision within the section 1983 two-year statute of limitations. Accordingly, Plaintiffs' claims for declaratory, injunctive and monetary relief against the Legislature and Governor must be dismissed because those claims are time-barred as a matter of law under the statute of limitations applicable to 42 U.S.C. § 1983.

**F. Plaintiffs' claims for declaratory and injunctive relief against the Governor must be dismissed because the Governor is not charged with enforcing the challenged provisions of state and local law and is therefore not a proper party-defendant under 42 U.S.C. § 1983 as a matter of law.**

Under section 1983, a plaintiff may bring claims asking for prospective declaratory or injunctive relief against state officials acting in their official capacities to enjoin their enforcement of allegedly unconstitutional laws. Ex parte Young, 209 U.S. 123, 155-56 (1908); L.A. Branch NAACP v. L.A. Unified Sch. Dist., 714 F.2d 946, 952 (9th Cir. 1983). However, such state officials are proper party-defendants only if they bear some connection to the enforcement of the challenged laws. Long v. Van de Kamp, 961 F.2d 151, 152 (9th Cir. 1992); S. Pac.

28

Transp. Co. v. Brown, 651 F.2d 613, 615 (9th Cir. 1980).  As further explained by

the Supreme Court in Ex parte Young:

> In making an officer of the state a party defendant in a suit to enjoin the
> enforcement of an act alleged to be unconstitutional, *it is plain that such
> officer must have some connection with the enforcement of the act*, or
> else it is merely making him a party as a representative of the state, and
> thereby attempting to make the state a party.

209 U.S. at 157 (emphasis added).

The connection necessary to trigger Ex parte Young "must be determined

under state law depending on whether and under what circumstances a particular

defendant has a connection with the challenged state law."  Snoeck v. Brussa, 153

F.3d 984, 986 (9th Cir. 1998).  The connection "must be fairly direct; a generalized

duty to enforce state law or general supervisory power over the persons responsible

for enforcing the challenged provision will not subject an official to suit."  L.A.

Cnty. Bar Ass'n v. Eu, 979 F.2d 697, 704 (9th Cir. 1992).  For example, "[w]here

the enforcement of a statute is the responsibility of parties other than the

governor . . . the governor's general executive power [to enforce laws] is

insufficient to confer jurisdiction [under Ex parte Young]."  Women's Emer. Net.

v. Bush, 323 F.3d 937, 949-50 (11th Cir. 2003); accord Nat'l Audubon Soc'y v.

Davis, 307 F.3d 835, 847 (9th Cir. 2002); Confederated Tribes v. Locke, 176 F.3d

467, 469-70 (9th Cir. 1999); L.A. Branch NAACP, 714 F.2d at 953; Shell Oil Co.

v. Noel, 608 F.2d 208, 211 (1st Cir. 1979) ("The mere fact that a governor is under

a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute.").

As discussed previously with regard to Article III standing, the Governor is not charged with enforcing the challenged provisions of state law that give certain Nevada counties the local option to license and regulate legal brothels, and the Governor is not charged with enforcing the county ordinances which implement that state law and actually license and regulate legal brothels. The power to enforce the challenged provisions of state and local law belongs exclusively to the proper local officials in the counties that license and regulate legal brothels. Kuban, 605 P.2d at 625-26. Consequently, because Plaintiffs did not sue the proper local officials in the counties that license and regulate legal brothels, they did not name the proper party-defendants to bring their claims for declaratory and injunctive relief. Accordingly, Plaintiffs' claims for declaratory and injunctive relief against the Governor must be dismissed because the Governor is not charged with enforcing the challenged provisions of state and local law and is therefore not a proper party-defendant under 42 U.S.C. § 1983 as a matter of law.

**G. Plaintiffs' claims for declaratory, injunctive and monetary relief must be dismissed as a matter of law because Plaintiffs have failed to join all necessary and indispensable party-defendants under FRCP 19.**

If a plaintiff has failed to join all necessary and indispensable party-defendants as required by FRCP 19, the plaintiff's claims must be dismissed as a

30

matter of law.  Franz v. E. Columbia Basin Irr. Dist., 383 F.2d 391, 392 (9th Cir. 1967) ("Where, as here, an indispensable party is not before the court, dismissal must follow."); Clark v. State of Wash., 366 F.2d 678, 682 (9th Cir. 1966) ("[D]ismissal of an action is warranted when an indispensable party . . . is not made a party to the action.").  For example, if a plaintiff has failed to join as party-defendants the proper state or local officials charged with enforcing a statute, "dismissal must follow."  Bogan v. New London Hous. Auth., 366 F.Supp. 861, 865 (D. Conn. 1973) (quoting Franz, 383 F.2d at 392).

Under the Due Process Clause, a person may not be deprived of legal rights in a judicial proceeding unless the person has been made a party to that proceeding. Martin v. Wilks, 490 U.S. 755, 758-62 (1989).  This constitutional rule stems from the "deep-rooted historic tradition that everyone should have his own day in court." Id. at 762.  These due process principles are reflected in FRCP 19, which requires joinder of all persons who qualify as necessary and indispensable parties that are needed for a just adjudication of the litigation so that all parties having material interests in the subject matter of the litigation will have proper notice of the litigation and an opportunity to protect their interests.

The burden is on the plaintiff to join all necessary parties, and the law does not impose any burden on a person to intervene voluntarily in an action when that person has not been made a party to the action by service of process.  Martin, 490

U.S. at 762-65. Thus, "[u]nless duly summoned to appear in a legal proceeding, a person not a privy may rest assured that a judgment recovered therein will not affect his legal rights." Chase Nat'l Bank v. City of Norwalk, 291 U.S. 431, 441 (1934). Accordingly, due process is not satisfied by the fact that a person has knowledge of the action and an opportunity to intervene. Martin, 490 U.S. at 762-65. Instead, "[j]oinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree." Id. at 765.

In this case, Plaintiffs are asking for: (1) a declaratory judgment that the local ordinances of the Nevada counties that license and regulate legal brothels are preempted by federal criminal laws; and (2) injunctive relief prohibiting those Nevada counties from implementing or enforcing their own local ordinances. (*ER0049.*) However, it is well established that "[a] public entity has an interest in a lawsuit that could result in the invalidation or modification of one of its ordinances, rules, regulations, or practices." E.E.O.C. v. Peabody W. Coal Co., 610 F.3d 1070, 1082 (9th Cir. 2010). Since Plaintiffs seek relief that would directly and adversely affect the interests of the Nevada counties in the validity of their own local ordinances, those Nevada counties are necessary and indispensable parties that are needed for a just adjudication of this litigation because they have material interests in the subject matter of this litigation. As such, those Nevada

counties are entitled by due process principles to proper notice of this litigation and an opportunity to protect their interests.

Furthermore, the Legislature and Governor cannot adequately represent and protect the interests of those Nevada counties in the validity of their own local ordinances. As discussed previously, the Legislature and Governor are not charged with enforcing the challenged provisions of state and local law, and they do not license and regulate legal brothels. The power to enforce the challenged provisions of state and local law and license and regulate legal brothels belongs exclusively to the proper local officials in the counties that license and regulate legal brothels. Kuban, 605 P.2d at 625-26. Therefore, because the Legislature and Governor are not the proper party-defendants to represent and protect the interests of those Nevada counties in the validity of their own local ordinances, Plaintiffs' claims for declaratory, injunctive and monetary relief must be dismissed as a matter of law because Plaintiffs have failed to join all necessary and indispensable party-defendants under FRCP 19.

**H. Plaintiffs' claims for declaratory, injunctive and monetary relief against all Defendants must be dismissed on their merits as a matter of law because the federal criminal laws do not preempt the challenged provisions of state and local law with regard to the licensing and regulation of legal brothels.**

Because federal law is the supreme law of the land under the Supremacy Clause, Congress has the power to preempt state and local law with federal law in

33

areas in which Congress is authorized to legislate. <u>Arizona v. United States</u>, 567 U.S. 387, 398-99 (2012). However, unless Congress uses express preemption language that clearly contemplates the preemption of substantial areas of traditional state regulation, a general presumption against federal preemption applies where "the field which Congress is said to have pre-empted has been traditionally occupied by the States." <u>United States v. Locke</u>, 529 U.S. 89, 108 (2000) (quoting <u>Jones v. Rath Packing Co.</u>, 430 U.S. 519, 525 (1977)). Based on the presumption against preemption, special rules of construction apply when federal law could be interpreted to intrude into areas traditionally regulated by state law. <u>Gregory v. Ashcroft</u>, 501 U.S. 452, 458-64 (1991).

Under those special rules of construction, it is presumed that Congress did not intend to alter the usual constitutional balance of power between the states and the Federal Government unless Congress makes its intention to do so unmistakably clear in the language of the statute. <u>Id.</u> at 460. "This plain statement rule is nothing more than an acknowledgement that the States retain substantial sovereign powers under our constitutional scheme, powers with which Congress does not readily interfere." <u>Id.</u> at 461. Consequently, to avoid any unintended encroachment on the authority of the states, "a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption." <u>CSX Transp. v. Easterwood</u>, 507 U.S. 658, 664 (1993). Thus, a

court generally will not interpret a federal statute to preempt the traditional police powers of the states unless that result is "the clear and manifest purpose of Congress." Id. (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)); Wyeth v. Levine, 555 U.S. 555, 565 (2009).

In this case, the challenged provisions that give certain Nevada counties the local option to license and regulate legal brothels involve areas that are traditionally regulated by state and local law, including public health and safety and the licensing and regulation of businesses and professions. Hillsborough Cnty. v. Automated Med. Labs., 471 U.S. 707, 719 (1985) ("[T]he regulation of health and safety matters is primarily, and historically, a matter of local concern."); Chamber of Commerce v. Whiting, 563 U.S. 582, 604-05 (2011) ("Regulating in-state businesses through licensing laws has never been considered such an area of dominant federal concern."). Thus, to establish preemption in this case, Plaintiffs must clearly show "a conflict between a particular local provision and the federal scheme, that is strong enough to overcome the presumption that state and local regulation of health and safety matters can constitutionally coexist with federal regulation." Hillsborough Cnty., 471 U.S. at 716.

Plaintiffs claim preemption based on federal criminal laws, including the Mann Act. On their face, the federal criminal laws that form the basis of Plaintiffs' preemption claims do not prohibit the act of prostitution. 18 U.S.C. § 1591(a); 18

35

U.S.C. § 2422(a); 22 U.S.C. §§ 7101-7114. Rather, the federal criminal laws prohibit a person from engaging in certain unlawful conduct which involves travel or other acts in or affecting interstate or foreign commerce and which relates to illegal prostitution or sex trafficking. Id. The federal criminal laws generally do not apply to conduct occurring wholly within a single state. As explained by the First Circuit:

> For example, the [Mann] Act was understood to reach transportation that occurred solely within Hawaii when it was a territory. See Lee v. United States, 125 F.2d 95, 96 (9th Cir. 1942). Once Hawaii achieved statehood, however, that same conduct could no longer violate the Mann Act.

United States v. Maldonado-Burgos, 844 F.3d 339, 344 (1st Cir. 2016).

Furthermore, Congress did not intend for the federal criminal laws to prohibit the act of prostitution or the operation of a house of prostitution occurring wholly within a single state. Twitchell v. United States, 313 F.2d 425, 428-29 (9th Cir. 1963), vacated in part on other grounds by Rogers v. United States, 376 U.S. 188 (1964); United States v. McConney, 329 F.2d 467, 468-69 (2d Cir. 1964); McGuire v. United States, 152 F.2d 577, 579-80 (8th Cir. 1945). As explained by the Ninth Circuit:

> **Neither prostitution nor maintaining or conspiring to maintain a house of prostitution is a federal offense.** It is not the business of federal prosecutors to prosecute for state offenses, or of federal courts to entertain such prosecutions. And we think that federal courts must be on guard against attempts to convert what are essentially offenses against state laws into federal crimes via the conspiracy route. That appears to us to be what happened here.

There is a mass of evidence from which a jury might find that Twitchell, who was sheriff of Snohomish County, conspired with various madams (Ashen, Rogers, Conklin) either separately or together, to operate one or more houses of prostitution in Snohomish County, Washington, in or near the City of Everett. According to this evidence, Twitchell's part was, in return for payoffs, to tolerate the operations and assure them a monopoly. But such a conspiracy is not a federal offense. **The federal offense is, speaking generally, interstate transportation or inducement of transportation of women for purposes of prostitution**, and the question we must decide is whether the evidence shows, in relation to Twitchell, participation in a conspiracy to commit such an offense.

* * *

Cases involving conspiracies to commit other federal offenses are not, in our judgment, particularly helpful. **This is because of the peculiar nature of offenses under the Mann Act. It is not a violation of that Act to employ, in a house of prostitution, women who have come from other states of their own accord, even if their purpose in coming was to indulge in prostitution.** Thus proof, of which there is a circumstantial modicum in this case, that Twitchell knew that some of the girls in the houses that he was protecting came from out of state, is not enough.

Twitchell, 313 F.2d at 428-29 (citations omitted and emphasis added).

Thus, because the federal criminal laws do not prohibit the act of prostitution or the operation of a house of prostitution occurring wholly within a single state, there is nothing in the challenged provisions of state and local law providing for the licensing and regulation of legal brothels that directly conflicts with the federal criminal laws. Furthermore, there is nothing in the challenged provisions of state and local law that "stands as an obstacle to the accomplishment and execution of

the full purposes and objectives of Congress." <u>Hillsborough Cnty.</u>, 471 U.S. at 713 (quoting <u>Hines v. Davidowitz</u>, 312 U.S. 52, 67 (1941)). Instead, the challenged provisions of state and local law can constitutionally coexist with the federal criminal laws. This constitutional coexistence is analogous to the constitutional coexistence of the federal Controlled Substances Act (CSA) and the medical marijuana laws of several states.

When confronted with the question of whether the federal CSA—which prohibits the use and possession of marijuana—preempts state medical marijuana laws that allow such use and possession for certain medical purposes, the majority of courts have found no federal preemption. <u>See, e.g.</u>, <u>Noffsinger v. SSC Niantic Operating Co.</u>, 273 F.Supp.3d 326, 333-34 (D. Conn. 2017) (holding that CSA did not preempt provisions of Connecticut's medical marijuana law that prohibited employers from discriminating against employees authorized to use medical marijuana under state law); <u>Reed-Kaliher v. Hoggatt</u>, 347 P.3d 136, 140-42 (Ariz. 2015) (holding that CSA did not preempt provisions of Arizona's medical marijuana law that provided immunity from prosecution for marijuana use or possession under state law); <u>Ter Beek v. City of Wyoming</u>, 846 N.W.2d 531, 536-41 (Mich. 2014) (holding that CSA did not preempt provisions of Michigan's medical marijuana law that provided immunity from prosecution for marijuana use or possession under state law); <u>City of Palm Springs v. Luna Crest Inc.</u>, 200

Cal.Rptr.3d 128, 131-33 (Cal. Ct. App. 2016) (holding that CSA did not preempt city's licensing and regulatory program for medical marijuana dispensaries); City of Garden Grove v. Superior Ct., 68 Cal.Rptr.3d 656, 676-77 (Cal. Ct. App. 2007) (holding that CSA did not preempt provisions of California's medical marijuana law that provided immunity from prosecution for marijuana use or possession under state law). As explained by the California Court of Appeal:

> In considering the City's preemption argument, it is also important to recognize what the [California law] does not do. It does not expressly "exempt medical marijuana from prosecution under federal law." "[O]n its face," the Act "does not purport to make legal any conduct prohibited by federal law; it merely exempts certain conduct by certain persons from California drug laws." While in passing the [California law] the voters may have wanted to go further and actually exempt marijuana from prosecution under federal law, a result which would have led to an irreconcilable conflict between state and federal law, we know from Raich that the Commerce Clause forecloses that possibility. So, what we are left with is a state statutory scheme that limits state prosecution for medical marijuana possession but does not limit enforcement of the federal drug laws. This scenario simply does not implicate federal supremacy concerns.

City of Garden Grove v. Superior Ct., 68 Cal.Rptr.3d 656, 676-77 (Cal. Ct. App. 2007) (quoting United States v. Cannabis Cultivators Club, 5 F.Supp.2d 1086, 1100 (N.D. Cal. 1998)).

Similarly, with regard to the challenged provisions of state and local law providing for the licensing and regulation of legal brothels, the challenged provisions do not exempt any illegal activity from prosecution under federal law, and the challenged provisions do not purport to make or declare any conduct legal

39

that is otherwise prohibited by federal law. Indeed, because the federal criminal laws do not prohibit the act of prostitution or the operation of a house of prostitution occurring wholly within a single state, the challenged provisions do not conflict with the federal criminal laws in any way at all. As a result, the challenged provisions establish a state and local regulatory scheme that limits state prosecution for certain acts of prostitution occurring wholly within Nevada but does not limit enforcement of the federal criminal laws in any way at all. Because this state and local regulatory scheme does not implicate federal supremacy concerns, the challenged provisions of state and local law can constitutionally coexist with the federal criminal laws.

Accordingly, Plaintiffs cannot clearly show a conflict between the challenged provisions of state and local law and the federal criminal laws that is strong enough to overcome the presumption that the state and local regulatory scheme can constitutionally coexist with the federal regulatory scheme. Therefore, Plaintiffs' claims for declaratory, injunctive and monetary relief against all Defendants must be dismissed as a matter of law because the federal criminal laws do not preempt the challenged provisions of state and local law with regard to the licensing and regulation of legal brothels in Nevada.

//

//

40

## **CONCLUSION**

Based on the foregoing, the Legislature asks this Court to affirm the district court's order granting the motions to dismiss.

DATED:    This __**3rd**__ day of June, 2020.

Respectfully submitted,

By:  /s/  Kevin C. Powers

**KEVIN C. POWERS**, Chief Litigation Counsel
Nevada Bar No. 6781
NEVADA LEGISLATIVE COUNSEL BUREAU, LEGAL DIVISION
401 S. Carson St.
Carson City, NV 89701
Tel: (775) 684-6830; Fax: (775) 684-6761
E-mail: kpowers@lcb.state.nv.us
*Attorneys for Defendant-Appellee Nevada Legislature*

## STATEMENT OF RELATED CASES

### Statement of Related Cases Pursuant to Cir. R. 28-2.6

### 9th Cir. Case No. 19-17423

I am the attorney for Defendant-Appellee Nevada Legislature, and I am unaware of any related cases currently pending in this court.

**Signature** /s/ Kevin C. Powers      **Date** June 3, 2020


## CERTIFICATE OF COMPLIANCE FOR BRIEFS

### Certificate of Compliance for Briefs Pursuant to Cir. R. 32-1

### 9th Cir. Case No. 19-17423

I am the attorney for Defendant-Appellee Nevada Legislature. **This brief contains  9,784  words**, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6). I certify that this brief complies with the word limit of Cir. R. 32-1.

**Signature** /s/ Kevin C. Powers      **Date** June 3, 2020

## <u>CERTIFICATE OF SERVICE FOR ELECTRONIC FILING</u>

**Service on Case Participants Who Are Registered for Electronic Filing:**

[X]   I hereby certify that I electronically filed and served the foregoing document on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

[X]   I hereby certify that I served the foregoing document on this date, having obtained prior consent, by email to the following unregistered case participants *(list each name and email address)*:

| | |
|---|---|
| **Gus W. Flangas, Esq.**<br>**Jessica K. Peterson, Esq.**<br>FLANGAS DALACAS LAW GROUP<br>3275 S. Jones Blvd. Ste. 105<br>Las Vegas, NV 89146<br>gwf@fdlawlv.com<br>jkp@fdlawlv.com<br>*Attorneys for Proposed Intervenor-Defendants Lance Gilman and Cash Processing Services, Inc.* | **Russell Greer**<br>7901 South 3200 West<br>P.O. Box 152<br>West Jordan, Utah 84088<br>russmark@gmail.com<br>*Pro Se Proposed Intervenor-Defendant* |

**Description of Document** (*required for all documents*)**:**

| |
|---|
| Nevada Legislature's Answering Brief |

**Signature**  /s/  Kevin C. Powers          **Date**  June 3, 2020

# **ADDENDUM**

**Table of Contents**

NRS 201.354.............................................................................A2

NRS 244.345.............................................................................A5

**NRS 201.354  Engaging in prostitution or solicitation for prostitution: Provision of certain information; criminal penalties; civil penalty; discharge and dismissal.**

1.  It is unlawful for any person to engage in prostitution or solicitation therefor, except in a licensed house of prostitution.

2.  Any person who violates subsection 1 by soliciting for prostitution:

(a) A peace officer who is posing as a child; or

(b) A person who is assisting a peace officer by posing as a child,

➥ is guilty of soliciting a child for prostitution.

3.  A prostitute who violates subsection 1 is guilty of a misdemeanor. A peace officer who:

(a) Detains, but does not arrest or issue a citation to a prostitute for a violation of subsection 1 shall, before releasing the prostitute, provide information regarding and opportunities for connecting with social service agencies that may provide assistance to the prostitute. The Department of Health and Human Services shall assist law enforcement agencies in providing information regarding and opportunities for connecting with such social service agencies pursuant to this paragraph.

(b) Arrests or issues a citation to a prostitute for a violation of subsection 1 shall, before the prostitute is released from custody or cited:

(1) Inform the prostitute that he or she may be eligible for assignment to a preprosecution diversion program established pursuant to NRS 174.032; and

(2) Provide the information regarding and opportunities for connecting with social service agencies described in paragraph (a).

4.  Except as otherwise provided in subsection 6, a customer who violates this section:

(a) For a first offense, is guilty of a misdemeanor and shall be punished as provided in NRS 193.150, and by a fine of not less than $400.

(b) For a second offense, is guilty of a gross misdemeanor and shall be punished as provided in NRS 193.140, and by a fine of not less than $800.

(c) For a third or subsequent offense, is guilty of a gross misdemeanor and shall be punished as provided in NRS 193.140, and by a fine of not less than $1,300.

5.  In addition to any other penalty imposed, the court shall order a person who violates subsection 4 to pay a civil penalty of not less than $200 per offense. The civil penalty must be paid to the district attorney or city attorney of the jurisdiction in which the violation occurred. If the civil penalty imposed pursuant to this subsection:

(a) Is not within the person's present ability to pay, in lieu of paying the penalty, the court may allow the person to perform community service for a

reasonable number of hours, the value of which would be commensurate with the civil penalty.

(b) Is not entirely within the person's present ability to pay, in lieu of paying the entire civil penalty, the court may allow the person to perform community service for a reasonable number of hours, the value of which would be commensurate with the amount of the reduction of the civil penalty.

6. A customer who violates this section by soliciting a child for prostitution:

(a) For a first offense, is guilty of a category D felony and shall be punished as provided in NRS 193.130, and by a fine of not more than $5,000.

(b) For a second offense, is guilty of a category C felony and shall be punished as provided in NRS 193.130.

(c) For a third or subsequent offense, is guilty of a category B felony and shall be punished by imprisonment in the state prison for a minimum term of not less than 1 year and maximum term of not more than 6 years, and may be further punished by a fine of not more than $15,000. The court shall not grant probation to or suspend the sentence of a person punished pursuant to this paragraph.

7. Any civil penalty collected by a district attorney or city attorney pursuant to subsection 5 must be deposited in the county or city treasury, as applicable, to be used for:

(a) The enforcement of this section; and

(b) Programs of treatment for persons who solicit prostitution which are certified by the Division of Public and Behavioral Health of the Department of Health and Human Services.

➥ Not less than 50 percent of the money deposited in the county or city treasury, as applicable, pursuant to this subsection must be used for the enforcement of this section.

8. If a person who violates subsection 1 is ordered pursuant to NRS 4.373 or 5.055 to participate in a program for the treatment of persons who solicit prostitution, upon fulfillment of the terms and conditions of the program, the court may discharge the person and dismiss the proceedings against the person. If the court discharges the person and dismisses the proceedings against the person, a nonpublic record of the discharge and dismissal must be transmitted to and retained by the Division of Parole and Probation of the Department of Public Safety solely for the use of the courts in determining whether, in later proceedings, the person qualifies under this section for participation in a program of treatment for persons who solicit prostitution. Except as otherwise provided in this subsection, discharge and dismissal under this subsection is without adjudication of guilt and is not a conviction for purposes of employment, civil rights or any statute or regulation or license or questionnaire or for any other public or private purpose, but is a conviction for the purpose of additional penalties imposed for a second or

A3

subsequent conviction or the setting of bail. Discharge and dismissal restores the person discharged, in the contemplation of the law, to the status occupied before the proceedings. The person may not be held thereafter under any law to be guilty of perjury or otherwise giving a false statement by reason of failure to recite or acknowledge the proceedings in response to an inquiry made of the person for any purpose. Discharge and dismissal under this subsection may occur only once with respect to any person. A professional licensing board may consider a proceeding under this subsection in determining suitability for a license or liability to discipline for misconduct. Such a board is entitled for those purposes to a truthful answer from the applicant or licensee concerning any such proceeding with respect to the applicant or licensee.

9.   Except as limited by subsection 10, if a person is discharged and the proceedings against the person are dismissed pursuant to subsection 8, the court shall, without a hearing, order sealed all documents, papers and exhibits in that person's record, minute book entries and entries on dockets, and other documents relating to the case in the custody of such other agencies and officers as are named in the court's order. The court shall cause a copy of the order to be sent to each agency or officer named in the order. Each such agency or officer shall notify the court in writing of its compliance with the order.

10.   A professional licensing board is entitled, for the purpose of determining suitability for a license or liability to discipline for misconduct, to inspect and to copy from a record sealed pursuant to this section.

11.   If, at any time before the trial of a prostitute charged with a violation of subsection 1, the prosecuting attorney has reason to believe that the prostitute is a victim of sex trafficking, the prosecuting attorney shall dismiss the charge. As used in this subsection, "sex trafficking" means a violation of subsection 2 of NRS 201.300.

(Added to NRS by 1987, 2027; A 1991, 462; 2009, 1245; 2015, 1003; 2017, 1656; 2019, 1910, 3365)

**NRS 244.345  Dancing halls, escort services, entertainment by referral services and gambling games or devices; limitation on licensing of houses of prostitution.**

1.  Every natural person wishing to be employed as an entertainer for an entertainment by referral service and every natural person, firm, association of persons or corporation wishing to engage in the business of conducting a dancing hall, escort service, entertainment by referral service or gambling game or device permitted by law, outside of an incorporated city, must:

(a) Make application to the license board of the county in which the employment or business is to be engaged in, for a county license of the kind desired. The application must be in a form prescribed by the regulations of the license board.

(b) File the application with the required license fee with the county license collector, as provided in chapter 364 of NRS, who shall present the application to the license board at its next regular meeting.

➥ The board, in counties whose population is less than 700,000, may refer the petition to the sheriff, who shall report upon it at the following regular meeting of the board. In counties whose population is 700,000 or more, the board shall refer the petition to the metropolitan police department. The department shall conduct an investigation relating to the petition and report its findings to the board at the next regular meeting of the board. The board shall at that meeting grant or refuse the license prayed for or enter any other order consistent with its regulations. Except in the case of an application for a license to conduct a gambling game or device, the county license collector may grant a temporary permit to an applicant, valid only until the next regular meeting of the board. In unincorporated towns and cities governed pursuant to the provisions of chapter 269 of NRS, the license board has the exclusive power to license and regulate the employment and businesses mentioned in this subsection.

2.  The board of county commissioners, and in a county whose population is less than 700,000, the sheriff of that county constitute the license board, and the county clerk or other person designated by the license board is the clerk thereof, in the respective counties of this state.

3.  The license board may, without further compensation to the board or its clerk:

(a) Fix, impose and collect license fees upon the employment and businesses mentioned in this section.

(b) Grant or deny applications for licenses and impose conditions, limitations and restrictions upon the licensee.

(c) Adopt, amend and repeal regulations relating to licenses and licensees.

(d)  Restrict, revoke or suspend licenses for cause after hearing. In an emergency the board may issue an order for immediate suspension or limitation of a license, but the order must state the reason for suspension or limitation and afford the licensee a hearing.

4.  The license board shall hold a hearing before adopting proposed regulations, before adopting amendments to regulations, and before repealing regulations relating to the control or the licensing of the employment or businesses mentioned in this section. Notice of the hearing must be published in a newspaper published and having general circulation in the county at least once a week for 2 weeks before the hearing.

5.  Upon adoption of new regulations the board shall designate their effective date, which may not be earlier than 15 days after their adoption. Immediately after adoption a copy of any new regulations must be available for public inspection during regular business hours at the office of the county clerk.

6.  Except as otherwise provided in NRS 241.0355, a majority of the members constitutes a quorum for the transaction of business.

7.  Any natural person, firm, association of persons or corporation who engages in the employment of any of the businesses mentioned in this section without first having obtained the license and paid the license fee as provided in this section is guilty of a misdemeanor.

8.  In a county whose population is 700,000 or more, the license board shall not grant any license to a petitioner for the purpose of operating a house of ill fame or repute or any other business employing any person for the purpose of prostitution.

9.  As used in this section:

(a)  "Entertainer for an entertainment by referral service" means a natural person who is sent or referred for a fee to a hotel or motel room, home or other accommodation by an entertainment by referral service for the purpose of entertaining the person located in the hotel or motel room, home or other accommodation.

(b)  "Entertainment by referral service" means a person or group of persons who send or refer another person to a hotel or motel room, home or other accommodation for a fee in response to a telephone or other request for the purpose of entertaining the person located in the hotel or motel room, home or other accommodation.

[1:50:1923; NCL § 2037] + [2:50:1923; NCL § 2038] + [3:50:1923; NCL § 2039] + [4:50:1923; NCL § 2040]—(NRS A 1959, 838; 1961, 364; 1971, 11; 1973, 923; 1975, 562; 1979, 20, 305, 511, 728, 730, 732, 733; 1989, 1899; 1991, 166; 2001, 1124; 2011, 1105)