No. 19-17423

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

REBEKAH CHARLESTON; ANGELA
DELGADO-WILLIAMS,
        Plaintiffs-Appellants,


    and


LEAH ALBRIGHT-BYRD,
        Plaintiff,


    vs.


STATE OF NEVADA; STEVE SISOLAK;
LEGISLATURE OF THE STATE OF
NEVADA,
        Defendants-Appellees,


    and


LANCE GILMAN; CASH PROCESSING
SERVICES, INC.; RUSSELL GREER,
        Proposed Intervenor-Defendants.

Appeal from U.S. District Court,
District of Nevada, Reno,
No. 3:19-cv-00107-MMD-WGC

## NEVADA LEGISLATURE'S
## SUPPLEMENTAL EXCERPTS OF RECORD
## VOLUME 1 OF 1

**KEVIN C. POWERS**, Chief Litigation Counsel
Nevada Bar No. 6781
NEVADA LEGISLATIVE COUNSEL BUREAU, LEGAL DIVISION
401 S. Carson St.
Carson City, NV 89701
Tel: (775) 684-6830; Fax: (775) 684-6761
E-mail: kpowers@lcb.state.nv.us
*Attorneys for Defendant-Appellee Nevada Legislature*

## CERTIFICATE OF SERVICE FOR ELECTRONIC FILING

**Service on Case Participants Who Are Registered for Electronic Filing:**
[X]   I hereby certify that I electronically filed and served this document on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**
[X]   I hereby certify that I served this document on this date, having obtained prior consent, by email to the following unregistered case participants *(list each name and email address)*:

| | |
|---|---|
| **Gus W. Flangas, Esq.** <br> **Jessica K. Peterson, Esq.** <br> FLANGAS DALACAS LAW GROUP <br> 3275 S. Jones Blvd. Ste. 105 <br> Las Vegas, NV 89146 <br> gwf@fdlawlv.com <br> jkp@fdlawlv.com <br> *Attorneys for Proposed Intervenor-Defendants Lance Gilman and Cash Processing Services, Inc.* | **Russell Greer** <br> 7901 South 3200 West <br> P.O. Box 152 <br> West Jordan, Utah 84088 <br> russmark@gmail.com <br> *Pro Se Proposed Intervenor-Defendant* |

**Description of Document** (*required for all documents*)**:**

| |
|---|
| Nevada Legislature's Supplemental Excerpts of Record <br> Volume 1 of 1 |

**Signature** /s/ Kevin C. Powers             **Date** June 3, 2020

i

**INDEX**

| Document | District Court Docket No. | Supp'l Excerpts of Record |
|---|---|---|
| Complaint for Declaratory and Injunctive Relief<br>*02/25/2019* | ECF No. 1 | **SER0001-SER0026** |

1 | JASON D. GUINASSO, ESQ. (SBN# 8478)
HUTCHISON & STEFFEN, PLLC
2 | 500 Damonte Ranch Parkway, Suite 980
Reno, NV 89521
3 | Telephone: (775) 853-8746
Facsimile: (775) 201-9611
4 | jguinasso@hutchlegal.com
*Attorney for Rebekah Charleston*

5

6 |                   **UNITED STATES DISTRICT COURT**

7 |                        **DISTRICT OF NEVADA**

8

| | |
|---|---|
| REBEKAH CHARLESTON; | Case No.: |
| Plaintiff, | Dept. No.: |
| vs. | |
| STATE OF NEVADA; STEVE SISOLAK, in his capacity as Governor of the State of Nevada, and the LEGISLATURE OF THE STATE OF NEVADA; | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| Defendants. | |

16    **COMES NOW**, Plaintiff Rebekah Charleston, by and through her undersigned

17 counsel of record, and hereby requests an order declaring Nev. Rev. Stat. 201.354(1), Nev.

18 Rev. Stat. 244.345(8), and the ordinances of Elko, Lander, Lyon, Mineral, Nye, Storey, and

19 White Pine Counties, licensing brothels unconstitutional, null and void as preempted by

20 federal law; and, a preliminary and permanent injunction be issued prohibiting the State of

21 Nevada and all of its political subdivisions from continuing to implement, enforce, or put into

22 force and effect Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8).

23 ///

24 ///

25 ///

-SER0001-

**I.**

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this action pursuant to Title 28 U.S.C. § 1331(2018) and Title 28 U.S.C. § 1343(3) (2018) in that the controversy arises under the United States Constitution and under 42 U.S.C. § 1983 (2018) and 28 U.S.C. § 2201 (2018) and 28 U.S.C. § 2202 (2018). This Court has authority to award attorneys' fees pursuant to 42 U.S.C. § 1988 (2018).

2.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) (2018); as Plaintiff has operated in, the subject offenses took place in, and a substantial amount of the decisions that are the subject of this civil action were made in this judicial district.

3.     An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201, and this Court has the authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202.

**II.**

## PARTIES

4.     Plaintiff is a resident of the State of Texas. Plaintiff has been directly impacted and harmed by the deprivation and violation of her federal rights under the United States Constitution by the actions of the State of Nevada and its officials under the color of state law by enacting Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8), codifying the language authorizing legalized prostitution in licensed brothels in counties with populations less than seven hundred thousand (700,000) within the State of Nevada.

5.     Defendant, State of Nevada (the "State"), organized and existing under, and by virtue of, the laws of the United States of America, has violated and continues to violate the United States Constitution by enacting Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8), and by codifying the language authorizing legalized prostitution in licensed

-SER0002-

1  brothels in counties with populations less than seven hundred thousand (700,000) within the
2  State of Nevada.

3      6.      Defendant, Legislature of the State of Nevada, is the legislative authority of
4  this State and has violated and continues to violate the United States Constitution by enacting
5  Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8) without regard to the harm inflicted
6  on Plaintiff and others like Plaintiff who have been illegally trafficked to Nevada to engage
7  in prostitution, and by codifying the language authorizing legalized prostitution in licensed
8  brothels in counties with populations less than seven hundred thousand (700,000) within the
9  State of Nevada.

10     7.      Defendant, Steve Sisolak is the Governor of the State of Nevada and is named
11  in this lawsuit in his official capacity only.

12                                        **III.**

13                          **GENERAL ALLEGATIONS**

14     A. **18 U.S.C. 2422(a) Clearly and Unambiguously was Enacted to Prevent
           Persons from Persuading, Inducing, Enticing, and/or Coercing any Person
15         to Travel Across State Lines to Engage in Prostitution.**

16     8.      On June 25, 1910, the 61st United States Congress passed H.R. 12315, also
17  known as "The Mann Act" (the "Act") (codified as 18 U.S.C. § 2422(a) (2018)), which
18  criminalized the interstate or foreign commerce transport "of any woman or girl for
19  prostitution, debauchery, or for any other immoral purpose." The primary intent was to combat
20  prostitution, immorality, and human trafficking for the purposes of prostitution in the United
21  States.

22  ///

23  ///

24

25

-SER0003-

1      9.    C.F.R 22 § 40.24(b) (2018) sets forth the meaning of Prostitution as "engaging

2 in promiscuous sexual intercourse for hire."[1]

3      10.   The Mann Act was amended in 1978, extending coverage to prohibit

4 transportation for immoral purposes from "any woman or girl" to "any individual" and

5 increased the penalties specified in the Act.

6      11.   The Mann Act was again substantially amended November 7, 1986. In addition

7 to deleting the terms "debauchery" and "other immoral purpose," the new language

8 criminalized coercion and enticement to "travel in interstate or foreign commerce … to engage

9 in prostitution" and removed the requirement for transport on an interstate common carrier.

10 The intent of the Act, specifically to combat prostitution and human trafficking for the

11 purposes of prostitution, remained unchanged.  The current version specifically provides:

12

13    Whoever knowingly persuades, induces, entices, or coerces any individual to travel in interstate or foreign commerce, or in any Territory or Possession of the United States, to engage in prostitution, or in any

14    sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned

15    not more than 20 years, or both.

16 U.S.C. 18 § 2422(a).

17 / / /

18 / / /

19 / / /

20 / / /

21 / / /

22

23 _____

[1] Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 499, 110 S. Ct. 2510, 2512, 110 L. Ed. 2d 455

24 (1990). An example of the Court utilizing the C.F.R. meaning of "reasonable" to define the

25 statutory requirement for what constitutes "reasonable cost" to be paid to healthcare providers.

1

2        **B. 18 U.S.C. 1591 Clearly and Unambiguously Was Enacted to Prevent Persons From Causing any Person in the Jurisdiction of the United States From Recruiting, Enticing, Harboring, Transporting, Providing, Obtaining, Advertising, Maintaining, Patronizing, or Soliciting by any Means, a Person to Engage in a Commercial Sex Act.**

3

4

5        12.    On October 28, 2000, the 106th Congress passed H.R. 3244, also known as the

6    "Victims of Trafficking and Violence Protection Act of 2000" (the "TVPA") (codified as 22

7    U.S.C. § 7101-7114 (2018)), which criminalized human trafficking and related offenses as

8    federal crimes with severe penalties attached and established several methods to prosecute

9    traffickers.

10       13.    U.S.C. 22 § 7102(4) sets forth the meaning of Commercial Sex Act as "any sex

11   act on account of which anything of value is given to or received by any person."

12       14.    The issue of trafficking in persons included those trafficked into the

13   commercial sex industry, modern day slavery, and forced labor.

14       **C. Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8) Directly Conflict With the Intent of Federal Law Expressed in 18 U.S.C. 2422(A) and 18 U.S.C. 1591 and Otherwise Perpetuate the Harm Federal Law was Enacted to Redress and Prevent.**

15

16

17       15.    The reason for vesting the power to regulate commerce in Congress was to

18   insure uniformity of regulation against conflicting and discriminating state legislation.

19   Addyston Pipe & Steel Co. v. United States, 175 U.S. 211, 227, 20 S. Ct. 96, 101, 44 L. Ed.

20   136 (1899).

21       16.    "The purpose of Congress is the ultimate touchstone in every pre-emption

22   case." Wyeth v. Levine, 129 S. Ct. 1187, 1194-1195 (2009) (quoting Medtronic, Inc. v. Lohr,

23   518 U.S. 470, 485 (1996).

24       17.    The Congressional intent of the federal law as expressed through the enactment

25   of 18 U.S.C. 2422(a) is clear, certain, and unambiguous, *to wit*, to prevent persons from

1  persuading, inducing, enticing, and/or coercing any person to travel across state lines to

2  engage in prostitution

3        18.    The Congressional intent of the federal law as expressed through the enactment

4  of 18 U.S.C. 1591 was to ensure just and effective punishment of traffickers and to protect

5  their victims.

6        19.    Nevada is the only state in the Union which allows commercialized

7  prostitution.

8        20.    The State of Nevada has allowed brothel operation since the nineteenth

9  century; however, the first officially sanctioned brothel was not in operation until 1971 when

10 the Storey County Commission licensed the Mustang Ranch Brothel.

11       21.    Thereafter, the Nevada Legislature passed Assembly Bill 550, (Nev. Rev. Stat.

12 201.354(1)), authorizing prostitution or solicitation for prostitution in Nevada in designated

13 brothels licensed by a county. State law presently allows counties of less than seven hundred

14 thousand (700,000) residents to issue such licenses. Nev. Rev. Stat. 244.345(8).

15       22.    There are currently twenty-one (21) operational brothels, located throughout

16 seven (7) Nevada counties (Elko, Lander, Lyon, Mineral, Nye, Storey, and White Pine).

17       23.    The State's creation of an intrastate commercialized prostitution market exerts

18 a substantial economic effect, namely, the creation of an interstate and foreign prostitution

19 market; therefore, Nevada's legal brothels, operating under Nev. Rev. Stat. 201.354(1) and

20 Nev. Rev. Stat. 244.345(8), are in violation of and direct conflict with U.S.C. 18 § 2422(a)

21 (2018). Wickard v. Filburn, 317 U.S. 111, 125, 63 S. Ct. 82, 89, 87 L. Ed. 122 (1942) (holding

22 that Congress's power to regulate "commerce" extends to intrastate activities that have an

23 "indirect effect" on trade, viz., home-grown wheat).

24       24.    Under the cover of Nevada law legalizing prostitution, brothels, brothel owners

25 and operators, and the women bought and sold in brothels for sex, actively and intentionally

persuade, induce, entice, and coerce men and women to travel in interstate commerce to engage in prostitution by advertising and marketing brothels and the sale of people for sex to individuals outside the State of Nevada through hundreds of websites, social media accounts, and other mass media.  **See Exhibit 1 at 0001-0102, (Examples of Advertising and Marketing). See also Exhibit 2 at 0103-0106, (Harrison Jacobs,** *The owner of America's most famous brothel explains how he promotes a business that's illegal to advertise,* **BUSINESS INSIDER (Oct. 15, 2015, 6:28p.m.), https://www.businessinsider.com/dennis-hof-explains-how-he-promotes-a-business-that-is-illegal-to-advertise-2015-10.)**[2]

25.    One former brothel owner explained to the "Business Insider" in detail how he promoted his brothel business nationally and internationally. Jacobs, *supra.*

26.    Clearly, based on the marketing, advertising and brothel owner's own admissions, participants in Nevada's legal brothel industry are, "knowingly persuad[ing], induc[ing], entic[ing], or coerc[ing] … individual[s] to travel in interstate or foreign commerce… to engage in prostitution," in violation of federal law.

27.    Moreover, multiple brothel owners have brazenly spoken publicly of their efforts to recruit young adult virgins from across all states and/or countries to auction their virginities at their brothels. **See Exhibit 3 at 0107-0110, (Amy B. Wang,** *'It's My Decision': This Woman is Auctioning Off Her Virginity to Help Her Family,* **THE WASHINGTON POST (October 25, 2016), https://www.washingtonpost.com/news/wonk/wp/2016/10/25/its-my-decision-this-woman-is-auctioning-off-her-virginity-to-help-her-family/?utm_term=.fc178e4 8287c.**

28.    Brothel owners and operators in Nevada regularly and with impunity violate

---

[2]Many individuals sold for sex who are based in Nevada travel. Nearly fourteen percent (14%) of individuals who are sold for sex in Nevada have a home base within the State but advertise across multiple cities or other states. **See Exhibit 7 at Page 9, ¶ 3.**

1  federal law. For example, one brothel owner and manager would send prostituted women out-

2  of-state to California, Illinois, Georgia, and South Carolina to see established sex buyers

3  whose credit cards were processed at the brothels during the time the women were

4  provisioned, though the sex acts occurred, and the buyers were out-of-state. The prostituted

5  women were placed on airplanes to provision sex acts in the state and city where the out-of-

6  state sex buyer was located. See **Exhibit 4 at 0111-0114, (Affidavit of Jane Doe Victim 1)**.

7          29.    As another example, while traveling internationally to Puerto Rico and Ireland,

8  one brothel owner would recruit women and conduct interviews for women he sought to

9  recruit to his brothel. *Id.*

10         30.    Women at the other brothels were transported by brothel drivers to Lake Tahoe

11  where they would cross into California where they were purchased for sex. When the brothel

12  owner became aware of an investigation, drivers were instructed to drop the women off at the

13  state border between Nevada and California and then the women would have to walk over the

14  state line into California and get into a taxi to reach their destinations. *Id.*

15         31.    While pimped at a Nevada brothel, Deanne Salinger (a woman commonly

16  referred to as "AirForce Amy") travelled with a sex buyer to Hawaii and to Mexico from

17  Nevada to engage in prostitution. *Id.*

18         32.    As another example, The Moonlight Bunny Ranch brothel advertised a College

19  Loan Match Funds Repayment Program "to recruit and entice more educated," "wholesome-

20  looking" women to engage in prostitution at the brothel. Under this "program," the brothel

21  management promised to match each dollar expended by the women towards repayment of

22  student loans. This advertisement was specifically used to lure women from across the United

23  States to engage in prostitution in the State of Nevada. *Id.*

24         33.    Men from other states and countries are often induced and enticed to travel

25  across state lines to the State of Nevada to engage in prostitution through various marketing

-SER0008-

1  campaigns like the "Get Your Grandpa Laid" contest hosted in conjunction with the nationally

2  syndicated Howard Stern Radio Show. See Exhibit 5 at 0115-0116, (*Media Ramsey- Howard*

3  *Stern Show- Get Grandpa Laid Contest 10/23/13* YOUTUBE (October 23, 2013),

4  https://www.youtube.com/watch?v=8sv3n2kBsuw.

5      34.    Brothels in Nevada would not likely be financially viable without the revenue

6  generated by the efforts of brothel owners, operators and the women being bought and sold

7  to persuade, induce, entice, or coerce individuals to travel in interstate or foreign commerce

8  to engage in prostitution.

9      C.    **There is A Positive Correlation Between Legal Prostitution and Illegal Sex Trafficking Through Interstate and Foreign Commerce.**

10

11      35.    Legal prostitution and sex trafficking are inextricably linked in Nevada as

12  elsewhere in the world where prostitution is legal.  Sex trafficking happens when and where

13  there is a demand for prostitution. See  Exhibit 6 at 0117-0165 (Seo-Young Cho, Axel

14  **Dreher, & Eric Neumeyer,** *Does Legalized Prostitution Increase Human Trafficking?,*

15  **WORLD      DEVELOPMENT,      at      pg.      41,      67-82      (2012),**

16  https://eprints.lse.ac.uk/45198/1/Neumayer _Legalized_Prostitution_Increase_2012.pdf);

17  See also **Exhibit 7 at 0166-0188  (Crysta N. Price, Terry D. Clark, & Julie Faller,**

18  *Nevada's Online Commercial Sex Market*, **HUMAN TRAFFICKING INITIATIVE, CREIGHTON**

19  **UNIVERSITY**           (2017),              https://awakenreno.org/wp-

20  content/uploads/2018/05/FINAL_Nevada_March2018.pdf;) See also **Exhibit 8 at 0189-0196**

21  **(Melissa Farley,** *Trafficking for Prostitution: Making the Connections*, **AMERICAN**

22  **PSYCHOLOGICAL ASSOCIATION (2007).**

23      36.    On average, in jurisdictions with legal prostitution, there is a statistically

24  significant larger reported incidence of illegal sex trafficking.  *Id.*  This circumstance is the

25  result of the increased demand created by the legal sex market.  As one expert put it, "wherever

1 | prostitution is legalized, trafficking to sex industry marketplaces in that region increases."
2 | Cho, *supra* at **pg. 3 ¶2.**

3 |     37.    The U.S. State Department has explained it is the official U.S. Government
4 | position that, "prostitution is inherently harmful and dehumanizing and fuels trafficking in
5 | persons." <u>See</u> **Exhibit 9 at 0197-0198 (U.S. DEPARTMENT OF STATE, TRAFFICKING IN**
6 | **PERSONS REPORT at pg. 27 (2007)).**

7 |     38.    In 2002, the President of the United States issued a National Security Directive
8 | declaring, "The United States Government opposes prostitution and any related activities,
9 | including pimping, pandering, or maintaining brothels," because these activities contribute to
10 | human trafficking.[3]

11 |     39.    The U.S. Justice Department has also named Las Vegas among the 17 most
12 | likely destinations for human trafficking.[4]

13 |     40.    The links between legal and illegal prostitution in Nevada and the profound
14 | harms caused by prostitution to all women are like those in other countries where legal
15 | prostitution exists such as the Netherlands and Australia. Wherever legal prostitution exists,
16 | sex trafficking increases. Farley, *supra* at **page 3, ¶2-3.**

17 |     41.    There is more online advertising for the sex trade in Nevada than in any other
18 | state.[5]

---

[3] National Security Presidential Directive – 22 (December 16, 2002).

[4] Sam Skolnik, *Do we have a human trafficking problem?*, LAS VEGAS SUN, (January 29, 2007).

[5] Melissa Farley, PROSTITUTION AND TRAFFICKING IN NEVADA: MAKING THE CONNECTIONS (Prostitution Research & Education, 2007).

1    42.    Nevada's illegal sex trade is estimated to be twice as large as other states.[6]

2    43.    According to a Creighton University Study of Nevada's on-line commercial

3  sex market published in May of 2018, adjusted for population, Nevada's commercial sex

4  market is by far the largest of any state. **See Exhibit 7 at Page 6, ¶ 1** This circumstance is a

5  direct result of the legal system used to induce, persuade and entice individuals to enter into

6  interstate and foreign commerce to engage in prostitution.

7    44.    At least five thousand sixteen (5,016) individuals are sold for sex in an average

8  month in Nevada.  Nevada's number of prostituted persons per capita is sixty-three percent

9  (63%) higher than the next highest state of New York and more than twice as many per capita

10 as in California. **See Exhibit 7 at Page 5, ¶ 2.**

11   45.    Legalized prostitution appears to have done nothing to stem victimization

12 within the illicit sex trade—the data shows that prostituted persons in the illegal trade around

13 licensed brothels are at a similar risk of having been trafficked as those in areas without legal

14 brothels. **See Exhibit 7 Page 21, ¶4.**

15 ///

16 ///

17 ///

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 _____

25 [6] *Id.*

46.     Prostitution is modern day slavery.[7]   Like those subjected to slavery, the prostituted are subject to domination and to the arbitrary will of another person.   A woman in a Nevada legal brothel explained, "No one really enjoys being sold. It's like you sign a contract to be raped." See Exhibit 10 at 0199-0211 (Melissa Farley, *Risks of Prostitution: When the Person Is the Product* 3 JOURNAL OF THE ASSOCIATION FOR CONSUMER RESEARCH (2017)), https://www.journals.uchicago.edu/doi/full/10.1086/695670 citing (Farley 2007b, 34).

47.     Prostitution is inherently an act of sexual coercion, is a form of sexual violence and is integrally connected to sex trafficking, drug abuse, brutality, rape, and murder.

48.     Prostitution and sex trafficking are closely linked. There is no demand for sexually trafficked persons per se.[8]   Rather, it is the prostitution industry by which sexually trafficked persons are exploited. See 22 U.S.C.A. § 7101, (Purpose and Findings" of the

_____

[7] U.S. Department of State, *What is Modern Slavery?*, https://www.state.gov/j/tip/what/. The federal government explained:

> When an adult engages in a commercial sex act, such as prostitution, as the result of force, threats of force, fraud, coercion or any combination of such means, that person is a victim of trafficking. Under such circumstances, perpetrators involved in recruiting, harboring, enticing, transporting, providing, obtaining, patronizing, soliciting, or maintaining a person for that purpose are guilty of sex trafficking of an adult. Sex trafficking also may occur through a specific form of coercion whereby individuals are compelled to continue in prostitution through the use of unlawful "debt," purportedly incurred through their transportation, recruitment, or even their "sale"—which exploiters insist they must pay off before they can be free. Even if an adult initially consents to participate in prostitution it is irrelevant: if an adult, after consenting, is subsequently held in service through psychological manipulation or physical force, he or she is a trafficking victim and should receive benefits outlined in the Palermo Protocol and applicable domestic laws.

[8] Dorchen A. Leigholdt, *Prostitution and Trafficking in Women: An Intimate Relationship*, 2 JOURNAL OF TRAUMA PRACTICE 167, 167-168 (2003).

-SER0012-

Trafficking Victims Protection Act) ("Many of these persons [sex trafficking victims] are trafficked into the international sex trade, often by force, fraud, or coercion. The sex industry has rapidly expanded over the past several decades. It involves sexual exploitation of persons, predominantly women and girls, involving activities related to prostitution...."). In fact, prostitution often satisfies the elements of trafficking.[9]

49.    Moreover, in most cases, the very act of prostitution should be considered sex trafficking since the exchange of money (or something of value) to obtain a sex act is an act of sexual coercion.[10]

/ / /

/ / /

/ / /

---

[9] U.N. ESCOR, COMM'N ON HUMAN RIGHTS *Integration of the Human Rights of Women and a Gender Perspective, Report of the Special Rapporteur on the Human Rights Aspects of the Victims of Trafficking in Persons, Especially Women and Children*, ¶ 42 U.N. Doc. E/CN.4/2006/62 (Feb. 20, 2006) (Sigma Huda) ("For the most part, prostitution, as actually practiced in the world, usually does satisfy the elements of trafficking.")

[10] Melissa Farley, *Prostitution is Sexual Violence*, PSYCHIATRIC TIMES (October 1, 2004), http://www.psychiatrictimes .com/ sexual-offenses/prostitution-sexual-violence; Melissa Farley, Very Inconvenient Truths: Sex Buyers, Sexual Coercion, and Prostitution-Harm-Denial, THE HAMPTON INSTITUTE (February 26, 2016), http://www.hamptoninstitution.org/ capitalism-coercion-and-prostitution.html#.WBCyzJMrIRE; and Yael Mellul & Lise Bouvet, *Why France Is Adopting A New Law That Criminalizes The Clients, Not Prostitutes*, HUFF POST (April 7, 2016), http://www.huffingtonpost.com/yaelmellul/why-france-is-adopting-a-_b_9635988.html. "In these transactions, the money coerces the sex rather than guaranteeing consent to it, making prostitution a practice of serial rape."

-SER0013-

50. According to a 2002 research study[11] of prostituted women in Chicago, nearly all prostituted persons studied had been "victimized by physical assaults". Raphael & Shapiro, *supra* at 18 (showing a table of "12 specific acts of violence [that] are those most frequently experienced by the respondents") ("in escort services, half of the women had ever been raped, and they were also subjected to other forms of violence, including slapping and being grabbed … Even women engaging in prostitution in their own residences – women many view as being in control – reported frequent violence, including 21% having been raped 10 or more times."). This level of violence, especially from the hands of sex buyers, speaks to the inherent danger of being a prostitute, with the most violent aspect of the job being the job itself, interacting with the customer.

51. Survivors have described their experiences of prostitution as "paid rape," "pay-as-you-go rape," and "being raped for a living."[12] "Indeed, rape is the defining experience of prostitution: the fear of it, the daily hypervigilance required to prevent it, the crushing physical and psychological trauma experienced by victims when it inevitably occurs."[13]

/ / /

/ / /

/ / /

/ / /

---

[11] Raphael, Jody & Deborah L Shapiro, SISTERS SPEAK OUT: THE LIVES AND NEEDS OF PROSTITUTED WOMEN IN CHICAGO 13 (2002).

[12] Rachel Moran, PAID FOR: MY JOURNEY THROUGH PROSTITUTION 112-113 (2013).

[13] Lisa Thompson, PROSTITUTED AND SEXUALLY TRAFFICKED PERSONS ARE RAPE VICTIMS, TOO (2016), HTTPS://WWW.SANE-SART.COM/PROSTITUTED-AND-SEXUALLY-TRAFFICKED-PERSONS-ARE-RAPE-VICTIMS-TOO/.

-SER0014-

52.     Nevada's legal brothels are estimated to generate more than seventy-five million dollars ($75,000,000) per year, while Las Vegas's illegal prostitution market is estimated to gross over five billion dollars ($5,000,000,000) per year. See **Exhibit 11 at 0212-0217, (RONALD B. FLOWERS, PROSTITUTION IN THE DIGITAL AGE: SELLING SEX FROM THE SUITE TO THE STREET? at pg. 42-46 (Praeger 2011)).**

53.     Since the legalization of prostitution has been associated with increased sex trafficking, the most vulnerable people in the brothel industry are at increased risk for harm.

54.     Decriminalization of prostitution does not prevent the violence and rape in prostitution, it assents to it. The State has an important government interest in preventing such violence; thus, it has an important government interest in preventing prostitution.

55.     More than thirteen percent (13%) of Nevada prostituted persons are advertised under the age of twenty-one (21). See **Exhibit 7 at Page 13, ¶ 1.**

56.     More than one (1) out of every ten (10) prostituted persons in Nevada is too young to buy alcohol. These young individuals are almost twice as likely to travel in interstate and foreign commerce while being prostituted compared to those who are twenty-one (21) and older. See **Exhibit 7 at Page 13, ¶ 2.**

57.     Many prostituted persons are advertised for their youth, regardless of their stated age. For example, phrases like "fresh meat," "brand new," and "daddy's little girl" are all used to connote the youth of prostituted persons. See **Exhibit 7 at Page 13, ¶ 3.**

58.     Youth is an important characteristic sought by sex buyers in Nevada. See **Exhibit 7 at Page 16, ¶ 1.**

59.     Evidence of the importance of youth to sex buyers in Nevada comes from the advertised prices of young prostituted persons. The data shows higher prices are charged for younger females in Nevada. See **Exhibit 7 at Page 16, Graph 1.**

60.     The data put Nevada in the top ten (10) states in the country in terms of youth

-SER0015-

1  of prostituted persons. **See Exhibit 7 at Page 13, ¶ 4.**

2      61.     Thirty percent (30%) of individuals sold for sex in Nevada are based in other

3  states, and another fourteen percent (14%) travel within the State. **See Exhibit 7 at Page 9, ¶**

4  **2.** Moreover, many of the women prostituted in Nevada brothels are not full-time residents

5  of Nevada, which means that they are being transported in interstate or foreign commerce to

6  Nevada to be bought and sold for sex in the brothels. Many women prostituted in Nevada

7  brothels travel from out-of-state and are bought and sold for sex in the brothels for short

8  periods of time and then return to their domicile state or country.

9      62.     For example, in an interview with one media outlet one woman prostituted in

10  a Nevada brothel admitted to residing in another state in the Midwest and commuting to

11  Nevada. In the interview, the woman also admitted that men who pay to have sex with her

12  live in other states and travel in interstate commerce to solicit prostitution. **See Exhibit 12 at**

13  **0218-0227b** (Alice Little, *A Week as a Legal Sex Working in Mound House, NV, on a*

14  *$267,000    Salary*    **REFINERY    29**    (Nov.    13,    2017,    1:40pm),

15  https://www.refinery29.com/money-diary-nevada-legal-sex-worker-salary;    ***TMZ.com,***

16  *Robert Kraft Courted By Nevada Prostitutes... It's Legal Here!!! (Feb. 23, 2019, 12:40am)*

17  https://www.tmz.com/2019/02/23/legal-prostitutes-robert-kraft-sheris-ranch-brothel/ ).

18      63.     Many of women prostituted in Nevada brothels are controlled by outside

19  pimps: "Despite the fiction that they are "independent contractors," most so-called legal

20  prostitutes have pimps — the state-sanctioned pimps who run the brothels and, in many cases,

21  a second pimp who controls all other aspects of their lives (and takes the bulk of their legal

22  earnings)."[14]  One federal court acknowledged this problem recently citing a study that found

23  that pimps remained common and some assaults against prostituted women occurred within

24  _____

25  [14] Herbert, Bob (2007-09-11). "Fantasies, Well Meant". The New York Times.

1   Nevada's legal brothels.   Coyote Publishing, Inc. v. Miller, 598 F. 3d 592, 596 fn2 (2010).

2        64.    Connections in the Reno/Tahoe area and between Las Vegas and southern

3   California are regional hubs and stand out as particularly important travel routes for those

4   entering and exiting interstate commerce to Nevada to engage in prostitution. **See Exhibit 7**

5   **at Page 21, ¶ 2.**

6        65.    California is by far the most important source of women who are being

7   prostituted in Nevada from another state. Nearly fifty-five percent (55%) of prostituted

8   women come from California, whereas Arizona, as the next most important source, supplies

9   only about five percent (5%). Over the course of a year, women who are being prostituted in

10  Nevada come from every state in the Union and the District of Columbia. **See Exhibit 7 at**

11  **Page 9, ¶ 2.**

12       66.    On October 3, 2018, the Lyon County Sheriff's Office conducted a series of

13  brothel work card compliance checks, assisted by U.S. Immigration and Customs

14  Enforcement officers, following a four (4) month internal audit of the inadequate prostitute

15  registration practices executed by Lyon County staff. **See Exhibit 13 at 0228-0236, (LYON**

16  **COUNTY SHERIFF'S OFFICE, INTERNAL AUDIT REPORT ON BROTHEL COMPLIANCE**

17  **REQUIREMENTS (2018)** ,  http://media.graytvinc.com/documents/LCSO+Internal+Audit

18  +Report+Brothels.pdf).

19       67.    The subject inadequate practices include: US immigration law violations,

20  foreign country human trafficking indicators, fraudulent statements, issuance of work cards

21  prior to completing criminal history background checks, and inability to validate out-of-state,

22  U.S., and other foreign national documents to determine identity.

23       68.    In a statement following the investigations, Sheriff Al McNeil of the Lyon

24  County Sheriff's Office noted, "the discovery of U.S. immigration law violations in our legal

25  brothel system is extremely alarming. The ability to coerce, exploit, and traffic non-U.S.

**-SER0017-**

1 | citizens into Lyon County by foreign criminal enterprises is going to be difficult to detect and
2 | deter by our limited capabilities and resources of foreign born applicants."

3 |      69.     An audit of the Applications for Brothel Work Permits of Lyon County, NV,
4 | discovered that one hundred sixty-eight (168) out of two hundred forty-one (241) applicants
5 | for prostitute work cards reside in a state other than Nevada and must travel in interstate
6 | commerce, from their state of residence to Nevada, to engage in prostitution at the brothels.
7 | *Id.*

8 |      70.     Thirty-seven (37) of the women registered for prostitute work cards from Lyon
9 | County in 2017-2018 alone have traveled in foreign commerce, from their international
10 | permanent residence to Nevada, to engage in prostitution at the brothels. *Id.*

11 |      71.     The United Nations Office on Drugs and Crime released a document on Human
12 | Trafficking Indicators that lists thirty-six (36) general indicators and twelve (12) sexual
13 | exploitation indicators. See **Exhibit 14 0237-0239, (UNITED NATIONS OFFICE ON DRUGS**
14 | **AND CRIME, HUMAN TRAFFICKING INDICATORS),** https://www.unodc.org
15 | /pdf/HT_indicators_E_LOWRES.pdf). According to the Lyon County Sheriff's report, many
16 | of these indicators were observed during this audit and, therefore, require further
17 | investigation. *Id.*

18 |      72.     The federal government acknowledges the link between prostitution and
19 | trafficking in women and children, as a form of modern day slavery. See **Exhibit 15 at 0240-**
20 | **0241, (U.S. DEPARTMENT OF STATE, THE LINK BETWEEN PROSTITUTION AND SEX**
21 | **TRAFFICKING (November 24, 2004),** https://2001-2009.state.gov/r/pa/ei/rls/38790.htm).

22 |      73.     The women who have been trafficked through Nevada's legal brothel market
23 | have been subject to the deprivation of rights, privileges, and immunities secured by the
24 | Constitution and Plaintiff hereby submits this action pursuant to 42 U.S.C. § 1983.

25 | / / /

**D. Plaintiff Rebekah Charleston Was a Victim of Sex Trafficking and Was Forced to Travel Within Nevada and In Interstate Commerce Across State Lines to Engage in Prostitution at Nevada Brothels, Under the Guise of Being a "Willing" Prostitute.**

74. Plaintiff Rebekah Charleston has been directly harmed as a result of Nevada's statute allowing counties of less than seven hundred thousand (700,000) people to license brothels and regulate prostitution.

75. Plaintiff was born in Texas. After living on the streets homeless as a runaway, she found solace in the arms of a person who seemed to be a nice older boyfriend. However, soon after, Plaintiff realized the true intentions this boyfriend had for her, which was to abuse and sexually exploit her. Soon thereafter, he trafficked Plaintiff for purposes of commercial sexual exploitation. A short time later, Plaintiff was traded to another trafficker who would violently abuse her while sexually exploiting her all across the country.

76. One of the first stops Plaintiff's sex trafficker made was to the State of Nevada, where her trafficker forced her to "get a job" at The Moonlight Bunny Ranch brothel.

77. Plaintiff's sex trafficker would send Plaintiff and others similarly situated to perform prostitution in the Nevada brothels as a form of punishment.

78. Plaintiff was not permitted to turn down a sex buyer. None of the acts in which she engaged being consensual, she was a victim of serial rape for profit.

79. The violence Plaintiff was subjected to at the hands of men who bought her was severe and dehumanizing. Plaintiff was violently raped and assaulted numerous times.

80. Plaintiff was not permitted to come and go as she pleased.

81. Plaintiff witnessed countless other women who, like her, were being trafficked inside Nevada's legal brothels.

82. Plaintiff was sexually trafficked at the brothel until her trafficker decided to move her to Las Vegas for greater profits in the illegal sex trade.

83.     Las Vegas is a well-known destination for people who are in the market to buy women for sex. The advertising and marketing from legal brothels in places like Nye County and Lyon County persuade, induce and entice people to travel in from across the country and all over the world to purchase prostituted persons in Nevada.

84.     Plaintiff was sexually trafficked for more than ten (10) years before she finally escaped when federal authorities became involved.

85.     Nevada was a regular location for Plaintiff to be sex trafficked. No matter where else her traffickers would take her, they would always return to Nevada to sell Plaintiff and others similarly situated to her because Nevada is the state where there was and is the greatest demand for prostitution whether legal or illegal.

**IV.**

**FIRST CAUSE OF ACTION**

**Violation of Civil Rights: 42 U.S.C. § 1983, Fourteenth Amendment**

**State Created Danger**

86.     Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

87.     By disregarding federal law, the acts of Defendants, including, but not limited to, authorizing a legalized commercial prostitution market to operate in the State, have created the danger that has led to irreparable harm to Plaintiff and other victims of sex trafficking by exposing them to the dangers of sex trafficking and prostitution without protections from the inherent dangers the federal law was enacted to prevent.

88.     As a direct and proximate consequence of the acts of Defendants' agents and employees, Plaintiff has suffered and continues to suffer actual, continual, and potential injury to her health and safety.

/ / /

-SER0020-

## SECOND CAUSE OF ACTION

### Violation of Civil Rights: 42 U.S.C. § 1983, Fourteenth Amendment

### Deprivation of Federal Rights

89.   Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

Section 1983 of 42 U.S.C. provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

90.   As a direct result of Nevada State officials and lawmakers disregarding United States Code, the Plaintiff and similarly situated Jane Doe victims who have been prostituted in the State of Nevada from out-of-state, have been deprived of their federal rights which have been provided to them under the Mann Act (U.S.C. 18 § 2422(a)) and the TVPA (22 U.S.C. § 7101-7114).   The federal law is clear on its face in prohibiting traveling in interstate and foreign commerce to engage in the act of prostitution or human trafficking.   Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8) unconstitutionally conflict with federal law and create an impermissible legal environment where brothels, brothel owners and operators, and women being bought and sold in brothels encourage, persuade and entice individuals into interstate and foreign commerce to engage in prostitution.

91.   The continued enactment of Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8) and each and every county ordinance enacted under these statutes is unconstitutional.

92.   By enacting Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8), Nevada has created and nurtured an industry that directly violates the Mann Act, and therefore,

-SER0021-

1  the State of Nevada is the proximate cause of the continued frequent acts of the brothel owners,

2  and the women sold in the brothels who knowingly persuade, induce, entice, or coerce men

3  and women to travel in interstate or foreign commerce, or in any Territory or Possession of

4  the United States, to engage in prostitution and at times, human trafficking.

5                                    **THIRD CAUSE OF ACTION**

6                                    **Declaratory/Injunctive Relief –**

7                      **Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8)**

8                      **Are Preempted by Both The Mann Act (U.S.C. 18 § 2422(a))**

9                      **and the TVPA (22 U.S.C. § 7101-7114) and are in Violation of**

10                            **The Supremacy Clause of The U.S. Constitution**

11        93.    Plaintiff realleges and incorporates by reference all prior and subsequent

12  paragraphs as if fully incorporated herein.

13        94.    On June 25, 1910, the 61st United States Congress passed H.R. 12315, also

14  known as "The Mann Act" (the "Act") (codified as 18 U.S.C. § 2422(a) (2018)), which

15  criminalized the interstate or foreign commerce transport of "any woman or girl for

16  prostitution, debauchery, or for any other immoral purpose."

17        95.    C.F.R. 22 § 40.24(b) sets forth the meaning of Prostitution as "engaging in

18  promiscuous sexual intercourse for hire." The Mann Act specifically provides:

19              Whoever knowingly persuades, induces, entices, or coerces any
                individual to travel in interstate or foreign commerce, or in any
20              Territory or Possession of the United States, to engage in
                prostitution, or in any sexual activity for which any person can be
21              charged with a criminal offense, or attempts to do so, shall be fined
                under this title or imprisoned not more than 20 years, or both.

22

23  U.S.C. 18 § 2422(a).

24        96.    The Congressional intent of the federal law as expressed through the enactment

25  of 18 U.S.C. 2422(a) is clear, certain, and unambiguous, *to wit*, to prevent persons from

persuading, inducing, enticing, and/or coercing any person to travel across state lines to engage in prostitution.

97. On October 28, 2000, the 106th Congress passed H.R. 3244, also known as the "Victims of Trafficking and Violence Protection Act of 2000" (the "TVPA") (codified as 22 U.S.C. § 7101-7114), which criminalized human trafficking and related offenses as federal crimes with severe penalties attached and established several methods to prosecute traffickers.

98. U.S.C. 22 § 7102(4) sets forth the meaning of Commercial Sex Act as "any sex act on account of which anything of value is given to or received by any person."

99. The Congressional intent of the federal law as expressed through the enactment of 18 U.S.C. 1591 was to ensure just and effective punishment of traffickers and to protect their victims.

100. There are three ways in which federal law will preempt state law: (1) Congress explicitly defines the extent to which its enactment preempts state law, or "express" preemption; (2) state law regulates conduct in a field that Congress intended federal government to occupy exclusively, or "field" preemption; and (3) state law actually conflicts with federal law, or "conflict" preemption. Motus v. Pfizer, Inc. 127 F. Supp.2d 1085, 1091 (Ca. C.D. 2000). Here, Nevada law is preempted by way of "conflict" with Federal law.

101. Nevada's intrastate commercialized prostitution market exerts a substantial economic effect, namely, the creation of an interstate and foreign prostitution market; therefore, Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8) are in direct conflict with and violation of U.S.C. 18 § 2422(a) and 22 U.S.C. § 7101-7114.

102. By disregarding federal law, the acts of Defendants, including, but not limited to authorizing a legalized commercial prostitution market to operate in the State, have created the danger that has led to irreparable harm to Plaintiff and other victims of sex trafficking by exposing them to the dangers of sex trafficking and prostitution without protections from the

-SER0023-

1  inherent dangers the federal law was enacted to prevent.

2      103.  Because the brothel industry in Nevada openly and notoriously persuades,

3  induces, entices, and coerces individuals to travel in interstate commerce to commit acts of

4  prostitution, Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8) cannot exist

5  simultaneously with 18 U.S.C.§ 2422(a) and 22 U.S.C. § 7101-7114 and thereby is preempted

6  and in violation of the Supremacy Clause of the U.S. Constitution.

7                                    **V.**

8                          **PRAYER FOR RELIEF**

9      WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

10     A.     For an Order declaring Nev. Rev. Stat. 201.354(1), Nev. Rev. Stat. 244.345(8),

11  and the ordinances of Elko, Lander, Lyon, Mineral, Nye, Storey, and White Pine Counties,

12  licensing brothels unconstitutional, null and void as preempted by federal law;

13     B.     A preliminary and permanent injunction be issued prohibiting the State of

14  Nevada and all of its political subdivisions from implementing, enforcing, or putting into force

15  and effect Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8);

16     C.     For an order requiring that: 1) the State allocate funds in an amount not less

17  than Two Million Dollars ($2,000,000) per year to the State Contingency Account specifically

18  for people seeking to exit the sex trade ("Nevada Sex Trade Exit Fund") and receive services

19  such as mental health services, rent assistant, job training, scholarships, funding for childcare,

20  medical treatments, tattoo removal, etc. 2) The Nevada Sex Trade Exit Fund require that all

21  recipients of money from The Nevada Sex Trade Exit Fund provide proof of having been

22  prostituted in Nevada through Nevada's legal brothels as a result of the enactment of Nev.

23  Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345-(8); 3) Any person who was ever in brothel

24  ownership or brothel management is ineligible to receive funding from the Nevada Sex Trade

25  Exit Fund; and 4)  The Nevada Sex Trade Exit Fund remain funded and running for ten (10)

-SER0024-

1 | years from the date Nev. Rev. Stat. 201.354(1) and Nev. Rev. Stat. 244.345(8) is declared null

2 | and void.

3 |      D.    For an award of reasonable attorneys' fees, costs, and litigation expenses plus

4 | interest accruing thereon, in their favor at the maximum rate allowed by law; and

5 |      E.    For such other relief as the Court or jury may deem just or equitable.

6 | DATED this 25th day of February, 2019.    HUTCHISON & STEFFEN, PLLC

7 |

8 |                             By: /s/ *Jason D. Guinasso*

9 |                             JASON D. GUINASSO, ESQ. (SBN# 8478)
                            *Attorney for Rebekah Charleston*

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

-SER0025-

## VERIFICATION

STATE OF _Texas_ )
_Tarrant County_ ) ss.
)

    I, Rebekah Charleston, being first duly sworn, under penalty of perjury, do hereby depose and say:

    I am the Plaintiff in this action and I have read the foregoing Complaint, know the contents of the Complaint and the matters stated therein are true of my own knowledge, except for those matters stated on information and belief, and, as to those matters, I believe them to be true.

DATED: This 20th day of February, 2019.

                              Rebekah Charleston

SUBSCRIBED and SWORN to before me this 20 day of February, 2019.

NOTARY PUBLIC