No. 19-17423

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

REBEKAH CHARLESTON; ET AL.,

*Plaintiffs-Appellants*,

v.

STATE OF NEVADA; ET AL.,

*Defendants-Appellees*.

On Appeal from a Judgment in a Civil Case granting Defendants'
Motions to Dismiss (ECF No.'s22,31)
United States District Court for Nevada (Reno)
No. 3:19-cv-00107-MMD-WGC
Hon. Miranda M. Du

---

## APPELLANTS' REPLY BRIEF

---

Jason D. Guinasso
(NV Bar No. 8478)
Hutchison & Steffen, PLLC
500 Damonte Ranch Parkway,
Suite 980
Reno, NV 89521
775.853.8746
jguinasso@hutchlegal.com

Christen M. Price
(DC Bar No. 1016277)
Benjamin W. Bull
(DC Bar No. 388206)
National Center on Sexual Exploitation
440 1st St. NW, Suite 840
Washington, D.C. 20001
202.393.7245
cprice@ncoselaw.org
bbull@ncose.com

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................... ii

TABLE OF AUTHORITIES ............................................................. iv

I.      INTRODUCTION ................................................................... 1

II.     ARGUMENT ........................................................................ 2

**A.  The motion to dismiss standard considers whether Plaintiffs have sufficiently alleged their claims in their First Amended Complaint, not whether they have fully proven them.** ............................................... 2

**B.  Plaintiffs have sufficiently alleged facts showing that the Defendants harmed them by violating their constitutional right to not be enslaved, through a legal scheme that enabled and protected the Nevada sex trade, which is likely to be redressed through injunctive, declaratory, and exit fund relief.** ................................................................................... 6

1.   Plaintiffs have sufficiently alleged facts regarding how being sex trafficked in Nevada violated their Thirteenth Amendment rights to not be enslaved, and injured them in a lasting and ongoing way. .................................................. 6

2.   Plaintiffs have sufficiently alleged facts linking their sex trafficking to Defendants' legal scheme that enabled and protected Nevada's commercial sex industry. ........................................................................ 7

3.   Plaintiffs have sufficiently alleged facts showing their injuries which are ongoing, are redressable through their requested injunctive, declaratory, and exit fund relief. ........................................................................ 12

**C.  Regardless of whether the Mann Act and the TVPA preempt relevant state law, Defendants' violations of both statutes are properly the subject of a 1983 lawsuit.** ............................................................................ 12

1.   Plaintiffs have alleged facts showing that the Defendants' legal scheme has enabled and protected Mann Act and TVPA violations. .............................. 13

2.   Nevada's provision of legal cover for Mann Act and TVPA violations is a Thirteenth Amendment violation, and state actors can be sued under Section 1983 for Thirteenth Amendment violations. ................................................. 17

**D.  Defendants' Procedural Objections Do Not Warrant Dismissal** ........... 19

1.   Defendant Sisolak is not entitled to Eleventh Amendment immunity in a Section 1983 lawsuit against him in his official capacity. ................................ 19

2.   If the Nevada counties are required parties to the suit, failure to name them as defendants at most warrants a court order to join them, not dismissal. ....... 23

3.   The First Amended Complaint was filed within the applicable statutes of limitations. .................................................................................................... 24

**III.    CONCLUSION ........................................................................................... 26**

# TABLE OF AUTHORITIES

## *Cases*

*Alto v. Black*, 738 F.3d 1111, 1126 (9th Cir. 2013) ................................................... 23

*Bailey v. State of Alabama*, 219 U.S. 219, 227 (1911) ............................................. 9

*Black v. Sec'y of Health and Human Servs.*, 93 F.3d 781, 790 (Fed.Cir.1996) ....... 5

*Cleveland v. United States*, 329 U.S. 14, 19 (1946 .......................................... 13, 14

*Coyote Publ., Inc. v. Miller*, 598 F.3d 592, 604 (9th Cir. 2010) ...................... 15, 21

*Feldman v. Law Enforcement Assocs. Corp.*, 752 F.3d 339, 347 (4th Cir.2014) ..... 5

*Jobson v. Henne*, 355 F.2d 129, 131-32 (2d Cir. 1966) ................................... 17, 18

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (cleaned up) ......................... 3

*McGarry v. Pallito*, 687 F.3d 505, 510–11 (2d Cir. 2012) ............................... 17, 18

*Miller v. Carson*, 563 F.2d 757 (5th Cir. 1977) ...................................................... 19

*Mitchum v. Foster*, 407 U.S. 225, 226 (1972) ........................................................ 19

*Northstar Fin. Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1048 (9th Cir. 2015) ......................................................................................................................... 5

*Ortiz v. United States,* 885 F. Supp. 363, 366 (D.P.R. 1995) ................................. 22

*Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007) ...................... 5

*Sierra Club v. Hodel,* 848 F.2d 1068, 1077 (10th Cir. 1988) ........................... 23, 24

*Smith v. Kentucky*, 520 S.W.3d 340, 354 (Ky. 2017); *I.L. v. Knox County Board Of Education*, No. 3:15-CV-558, 2017 U.S. Dist. LEXIS 92257, at *24 & n.4 (E.D. Tenn. June 15, 2017) ................................................................................................. 3

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016) (cleaned up) ............................................................................................................... 3

*Taylor v. State of Ga.*, 315 U.S. 25 (1942) ............................................................. 9

*Texas Partners v. Conrock Co.*, 685 F.2d 1116, 1119 (9th Cir.1982).....................4

*United States v. Pelton*, 578 F.2d 701, 713 (8th Cir. 1978)..................................13

*United States v. Reyes,* 866 F.3d 316, 321 (5th Cir. 2017).....................................3

*Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir. 1987) ...................................3

*Village of Los Rancheros De Albuquerque v. Marsh*, 956 F.2d 970, 973 (10th Cir. 1992)..........................................................................................................23, 24

**Statutes**

18 U.S.C. § 2421..........................................................................................13

18 U.S.C. § 2422......................................................................................1, 13

18 U.S.C. §§ 2421–2424.......................................................................passim

18 U.S.C. §1591........................................................................................passim

22 U.S.C. § 7102 (11) (A)(B) ..................................................................14

22 U.S.C. §§ 7101–7114........................................................................1, 2

42 U.S.C. § 1983...................................................................................passim

42 U.S.C.A. § 1988.................................................................................24

NRS § 201.354(1) ..................................................................................20

NRS § 201.356.......................................................................................21

NRS § 201.430....................................................................................14, 20

NRS § 244.345 (8) .................................................................................20

NRS § 441A.120.....................................................................................21

NRS 678A...............................................................................................21

NRS. § 171.095.......................................................................................25

***Rules***

§ 244.345 ................................................................................................. 8

Fed. R. Civ.P. 19(a)(1-2) ...................................................................... 23

Fed. R. Civ.P. 19(b) .............................................................................. 23

Rule 19 .................................................................................................. 24

Rule 19(a) ............................................................................................. 24

***Regulations***

NAC § 441A.800 .................................................................................. 21

NAC § 441A.805 .................................................................................. 15

***Constitutional Provisions***

Thirteenth Amendment, U.S. Const. amend. XIII ........................... passim

## I.    INTRODUCTION

Over several years, the Plaintiffs-Appellants in this case have been subjected to repeated sexual violence for someone else's profit in the State of Nevada.  They have alleged how their sex trafficking was enabled by the legal scheme Nevada has created, and they desire the opportunity to prove the case that they have brought. The State of Nevada and its officials have formally permitted prostitution in certain counties, and they have otherwise allowed prostitution to flourish statewide, including through a significant sex tourism industry, without sufficiently enforcing laws to protect people sex trafficked into it.

The Mann Act codified as 18 U.S.C. §§ 2421–2424, and the Trafficking Victims Protection Act (TVPA), codified as 22 U.S.C. §§ 7101–7114, forbid inducing or coercing people to travel across state lines for prostitution and engaging in or profiting from sex trafficking for prostitution through force, fraud, or coercion, or where the person is a minor, respectively.  18 U.S.C. § 2422; 18 U.S.C. §1591. These laws are rooted in the Thirteenth Amendment, U.S. Const. amend. XIII's prohibition against slavery and involuntary servitude.  And for this reason, states have an obligation to protect and to not violate these rights.

When states fail, they can be sued under 42 U.S.C. § 1983, a statute whose express purpose is to protect vulnerable citizens from state indifference to or abuse of their constitutional rights.  The Plaintiffs have brought just such a case against the

State of Nevada, the Nevada Legislature, and the Nevada Governor (Defendants). The District Court's decision to dismiss that case assumed that Plaintiffs' Complaint was obliged to prove the whole case at the outset, without the benefit of discovery, rather than sufficiently alleged facts stating a claim against the Defendants. Accordingly, Plaintiffs ask this Court to reverse the District Court's decision and allow them their day in court.

## II.   ARGUMENT

This Argument will proceed by: I) recalling the standard of review and the relevant pleading for determining whether Plaintiffs have sufficiently alleged standing; II) summarizing the Plaintiffs' allegations and arguments in support of standing, with particular focus on the Plaintiffs' Thirteenth Amendment analysis; III) arguing how Mann Act and TVPA violations, as Thirteenth Amendment violations, are properly the subject of a Section 1983 lawsuit; and IV) addressing several of Defendants' procedural arguments against reversal.

### A.   The motion to dismiss standard considers whether Plaintiffs have sufficiently alleged their claims in their First Amended Complaint, not whether they have fully proven them.

This Appeal is from the District Court's grant of the Defendants' motions to dismiss. (ER0001-ER0009). Because motions to dismiss, not motions for summary judgment, are at issue, a court must presume all factual allegations of complaint to

be true and draw all reasonable inferences in the Plaintiffs' favor. *Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir. 1987).

To establish Article III standing, plaintiffs must demonstrate they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016) (cleaned up).[1]  This means that "each element" of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (cleaned up).

Accordingly, at the motion to dismiss stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim."  504 U.S. at 561 (cleaned up).  That is, Plaintiffs need not prove standing, but they must sufficiently allege it.

---

[1] This Brief uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See, e.g., United States v. Reyes,* 866 F.3d 316, 321 (5th Cir. 2017); *Smith v. Kentucky*, 520 S.W.3d 340, 354 (Ky. 2017); *I.L. v. Knox County Board Of Education*, No. 3:15-CV-558, 2017 U.S. Dist. LEXIS 92257, at *24 & n.4 (E.D. Tenn. June 15, 2017).

Despite this standard, one of the Legislature's argument headings states that Plaintiffs have "failed to establish Article III standing." *See* Leg. Answering Brief p. 12. This "establish" language appears throughout their Brief, including in their statement of the issues and statement of jurisdiction. *See id.* at pp. 3, 12.

Similarly, the State of Nevada's Answering Brief states that Plaintiffs must "establish" standing, and that Plaintiffs "cannot establish" that Nevada's brothel regulations caused their injuries. Gov. Brief pp. 11, 13. But at this stage in the litigation, Plaintiffs do not have to "establish" anything. They have to sufficiently allege facts showing standing and stating a claim for Section 1983 violations.

The Defendants are essentially demanding that the Plaintiffs meet a summary judgment standard without the benefit of discovery, as the court below did, in violation of Ninth Circuit precedent. Courts are not supposed to turn motions to dismiss into summary judgment motions where no discovery has taken place. *Texas Partners v. Conrock Co.*, 685 F.2d 1116, 1119 (9th Cir.1982).

The Legislature's Brief also mistakes the relevant pleading for assessing standing. The Legislature cites several cases for its contention that the First Amended Complaint is irrelevant to the standing inquiry, asserting that only the original complaint can be used to analyze jurisdiction. Leg Brief p. 25.

But it does not cite a single Ninth Circuit case, Leg Brief at 5, and the circuits differ in how they approach this question, *Compare id.* with *Feldman v. Law*

*Enforcement Assocs. Corp.*, 752 F.3d 339, 347 (4th Cir.2014) ("[W]e construe the present complaint as a supplemental pleading under Rule 15(d), thereby curing the defect which otherwise would have deprived the district court of jurisdiction under Rule 15(c)."); *Black v. Sec'y of Health and Human Servs.*, 93 F.3d 781, 790 (Fed.Cir.1996) ("Nonetheless, a defect in the plaintiff's case, even a jurisdiction defect, can be cured by a supplemental pleading under Rule 15(d) in appropriate circumstances.").

As it happens, the Ninth Circuit's approach appears to be precisely the opposite of what the Legislature asserts, and permits additional pleadings to cure jurisdictional defects. *See Northstar Fin. Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1048 (9th Cir. 2015), *as amended on denial of reh'g and reh'g en banc* (Apr. 28, 2015) (affirming district court decision to allow a plaintiff to file a supplemental pleading to cure a jurisdictional defect).

Even more on point, given that the Plaintiffs voluntarily amended their Complaint, the Supreme Court has stated that, "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007). The Plaintiffs voluntarily amended the original complaint three weeks after filing it. (ER0011-ER0055). Thus, the proper document for assessing

whether Plaintiffs have stated a claim is the First Amended Complaint, and that is what the Plaintiffs will be relying on in this Reply Brief.

**B.** **Plaintiffs have sufficiently alleged facts showing that the Defendants harmed them by violating their constitutional right to not be enslaved, through a legal scheme that enabled and protected the Nevada sex trade, which is likely to be redressed through injunctive, declaratory, and exit fund relief.**

Plaintiffs have alleged sufficient facts for standing; they have alleged facts describing their injuries from being trafficked for sex, they have alleged facts explaining how their subjection to sexual slavery is "fairly traceable" to the Defendants' legal protection for the sex trade, and they have alleged facts showing how those injuries can likely be redressed through a declaration clarifying the wrongs done to them, an injunction against the laws providing legal cover for the wrongs done to them, and survivor-focused resources to enable healing and recovery.

**1.** **Plaintiffs have sufficiently alleged facts regarding how being sex trafficked in Nevada violated their Thirteenth Amendment rights to not be enslaved, and injured them in a lasting and ongoing way.**

As discussed in their Opening Brief, Plaintiffs have alleged facts describing their injuries resulting from serial rape over several years, sexual servitude, sexual and physical assault, repeated revictimization, psychological trauma, and risk of sexually transmitted diseases. *See* Plaintiffs' Brief pp. 11-14 (citing ER0029-

ER0045, ER0345). Sexual trauma is an ongoing injury, not only because it is an extreme form of harm, but because a person subjected to it can never leave the site of it. While the District Court, in its injury-in-fact analysis, refused to consider these facts (ER0009) in their answering briefs, the Defendants do not appear to contest Plaintiffs' injuries, focusing their arguments on traceability and redressability.

> **2. Plaintiffs have sufficiently alleged facts linking their sex trafficking to Defendants' legal scheme that enabled and protected Nevada's commercial sex industry.**

The Legislature, incorrectly assuming that the First Amended Complaint is irrelevant to the standing analysis, argues that Plaintiff Charleston's standing turns on her state of residency (Texas), Leg Brief p. 28, despite her allegations that she was specifically trafficked from Texas to a legal brothel in Nevada, (ER0029-ER0030 at ¶¶ 78-86), and characterizing years of rape and other sexual violence as a "generalized interest or grievance" because Ms. Charleston is not currently in a trafficker's hands, Leg Brief p. 28.

The Legislature's Brief also disputes standing by arguing that Plaintiffs sued the wrong officials, and by arguing against redressability (but only as to two of the three requested forms of relief). Leg Brief pp. 26-31. The brief does not appear to analyze the traceability factor, and in any case does not respond at all to the Plaintiffs' Thirteenth Amendment analysis supporting traceability. *Compare* Leg Brief pp. 26-31 *with* Plaintiffs' Brief pp. 29-32.

Similarly, the Governor and State's Brief also ignores the core of the Plaintiffs' traceability argument, essentially averring that the sex traffickers' illegal conduct had nothing to do with NRS §§ 244.345 and 201.354, on the theory that all those statutes do is give local governments in certain counties the right to permit prostitution if they want to.[2] Gov Brief pp. 13-18. The Governor and State write:

> While it may be true that legal prostitution augments the overall demand for illegal prostitution, Appellants must demonstrate that their individual injuries are fairly traceable to the existence of NRS §§ 244.345 and 201.354. Their lawsuit ultimately begs the question whether they would have been victimized by sex traffickers in the absence of NRS §§ 244.345 and 201.354. This is an unanswerable question because far too many variables influence the course of any person's life.

Gov. Brief p. 15.

This is a summary judgment framing, not a motion to dismiss framing. It is also an admission that legal prostitution can create a demand and therefore lead to illegal prostitution, which is precisely what Plaintiffs allege happened to them. The Defendants can certainly choose to test the evidence for that allegation, but that is something that happens in discovery, not at the motion to dismiss stage.

This framing also ignores the way the Supreme Court has treated state laws that provided legal cover for slavery, even if it was not apparent from the face of the

---

[2] The Governor and State claimed Plaintiffs did not sue to remedy a constitutional injury, but, again, offered no refutation to the Thirteenth Amendment constitutional injury analysis that Plaintiffs provided. *See* Gov Brief p. 18.

law and even if an actual violation depended on several variables, including third party acts. *See, e.g.*, Plaintiffs' Brief pp. 29-32 (citing *Bailey v. State of Alabama*, 219 U.S. 219, 227 (1911); *Taylor v. State of Ga.*, 315 U.S. 25 (1942)).

State action, including by enacting or enforcing statutes (or by refusing to enforce them), that effectively creates involuntary servitude situations violates the Thirteenth Amendment, even where third-party actions (in these cases, creating a contract and breaking it) were necessary for the statutes to have any effect. *Bailey v. State of Alabama*, 219 U.S. 219, 227-28, 244-45 (1911) (holding that state law criminalizing failure to perform a contract for services violated the Thirteenth Amendment ban on involuntary servitude) (cleaned up) ("Without imputing any actual motive to oppress, we must consider the natural operation of the statute here in question and it is apparent that it furnishes a convenient instrument for the coercion which the Constitution and the act of Congress forbid[.]"). *See also Taylor v. State of Ga.*, 315 U.S. 25 (1942) (holding that Georgia statute making it illegal to obtain anything of value on a contract for services without completing the contract violated Thirteenth Amendment ban on involuntary servitude).

In short, states cannot use a regulatory system to do indirectly what they cannot do directly; that is the message of the post-Reconstruction peonage cases. Southern states still could regulate contract law. They just could not regulate it in a way that guaranteed chattel slavery would continue in another form. So too here.

The Defendants can still regulate prostitution, just as other states do. But they cannot regulate or protect it in a way that guarantees that slavery will continue in the form of sex trafficking and involuntary sexual servitude.

Plaintiffs have alleged numerous facts connecting slavery in the form of sex trafficking with legal protections for prostitution, both as a general matter, and as to Nevada specifically. (ER0016-ER0028 at ¶¶ 21-75). They allege that Nevada has provided legal cover for prostitution, that prostitution is inextricably intertwined with rape, coercion, and violence, that demand for prostitution leads to sex trafficking, that men travel to Nevada to buy sex because they incorrectly believe it is legal throughout the state, and that the sex industry in Nevada exploits this misconception with impunity, that is, by operating both legal and illegal brothels that violate federal immigration and anti-trafficking law, without facing enforcement from Nevada. (ER0016-ER0028 at ¶¶ 21-75, ER0043-ER0044 at ¶¶ 201-202).

Plaintiffs' traceability argument is a simple one. Men choose to purchase women in prostitution when it is *illegal* for them to do so. Nevada has made it legal, giving not only local men an incentive to purchase women in prostitution to a greater degree, but giving other men a reason to travel to Nevada, a state that markets itself as a sex tourist destination, (ER0040 at ¶ 169, ER0043 at ¶ 201), and derives a significant percentage of its GDP from tourism. This is called the sex buying demand. When it goes up, so does the number of women "necessary" to supply it,

10

and at least some will be forced to do so, as Plaintiffs were, and as Plaintiffs have alleged.  (ER0021-ER0025 at ¶¶ 47-56).

The Defendants may protest that the Plaintiffs' sex traffickers were operating outside the law, but that is beside the point if the Defendants were not enforcing the laws in the first place.  In fact, as discussed further below, the Defendants arguably cared so little about enforcing these laws that they did not bother to set up a state enforcement board as they did with cannabis, although they did manage to set up a state-level process to force women to be tested for STIs to protect the men buying them.

And in any case, that is the Plaintiffs' point:  if the law establishes a certain tolerance for prostitution (which is what Nevada has done by even leaving it up to certain counties to legalize prostitution if they wish), trafficking women for prostitution is not far behind.  The experiment has been repeated enough to be a truism.  Taking the plaintiffs' factual allegations as true, and drawing all reasonable inferences in their favor, the Plaintiffs have sufficiently alleged that their sex trafficking for prostitution was traceable to the Defendants' providing legal cover for prostitution.

    **3.**     **Plaintiffs have sufficiently alleged facts showing their injuries which are ongoing, are redressable through their requested injunctive, declaratory, and exit fund relief.**

As described in their Complaint, and Opening Brief, Plaintiffs seek injunctive, declaratory, and exit fund relief. The Plaintiffs have requested declaratory and injunctive relief that would invalidate the legal scheme that enabled their abuse and validate their experiences of being trafficked for sex in violation of their Thirteenth Amendment rights, and have also requested that an exit fund be created to assist with navigating the ongoing effects of years-long trauma. (ER0049-ER0050).

Assuming that the Plaintiffs' factual allegations are true, it is reasonable to infer that these measures are likely to redress the Plaintiffs' injuries given the lasting physical and psychological trauma that results from their being sex trafficked. Accordingly, Plaintiffs have adequately pled that their injuries are redressable by the relief they seek.

    **C.**     **Regardless of whether the Mann Act and the TVPA preempt relevant state law, Defendants' violations of both statutes are properly the subject of a 1983 lawsuit.**

Plaintiffs have alleged facts explaining how Defendants' protection of the sex trade violates federal antislavery laws, and therefore Thirteenth Amendment, which protects rights that Section 1983 was enacted to defend.

1.  **Plaintiffs have alleged facts showing that the Defendants' legal scheme has enabled and protected Mann Act and TVPA violations.**

The Mann Act prohibits transporting individuals in interstate commerce for the purposes of prostitution. 18 U.S.C. § 2421. It also prohibits inducing, enticing or coercing someone to cross state lines for the purposes of prostitution. 18 U.S.C. § 2422. Whether or not the ultimate destination has a legalized brothel does not matter. *See United States v. Pelton*, 578 F.2d 701, 713 (8th Cir. 1978).

In *Pelton*, a woman was induced to travel from Missouri to Nevada to work in a legal brothel in Winnemuca, which the court determined still violated the Mann Act. *Id*. at 705. Nor did it matter in that case that the woman appeared willing to go. *Id*. at 712. The court in that case was clearly entertained by the "ingenuity" of the argument that this interfered with the woman's right to work but asserted that there is no constitutional protection for prostitution. *Id*. at 710. The inducement itself was the violation of the Mann Act and sufficient to affirm the conviction. *Id*. at 713.

Moreover, even if the underlying relevant law is a state police power, federal law may be violated. Congress' power to regulate interstate commerce is plenary and it does not matter if the regulation of the underlying relevant law is something the state ordinarily controls. *Cleveland v. United States*, 329 U.S. 14, 19 (1946). In *Cleveland*, women were transported across state lines for the purpose of polygamy. *Id*. at 16. Because polygamy was illegal, the petitioners' claims that this was an

13

unfair intrusion on both state power and their religious rights were quickly dismissed. *Id*. at 14.n Polygamy was a prohibited practice and the Mann Act was appropriately applied. *Id*.

In addition, the TVPA describes severe forms of trafficking as ones where "a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age; or the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery." 22 U.S.C. § 7102 (11) (A)(B). The issue is whether coercion, force or fraud are occurring, or if forms of peonage or debt bondage are occurring. The issue is not whether the type of work or the commercial sex act is in itself legal.

Brothels are barred from advertising in counties where they are illegal. NRS § 201.430. There is no distinction made per the type of advertising, therefore online advertising is included in the restriction. Yet, accessing the brothel websites, social media pages, and even Yelp pages takes only a few clicks, from outside of counties where it is legal and from other states. No filters or geo-blocking are in place, and local police do not appear to be citing brothels who break these rules. These ads violate Nevada's own laws that were upheld by the Ninth Circuit Court which

indicate a substantial state interest in "preventing the commodification of sex." *Coyote Publ., Inc. v. Miller*, 598 F.3d 592, 604 (9th Cir. 2010).

Furthermore, brothel websites are constantly soliciting women to come work for them and they do not limit their solicitation to Nevada residents. For example, the Desert Rose Club informs women that they cannot help them get to Nevada, but once they are in Nevada, the Club can help with the rest. The Chicken Ranch offers virtual interviews and assures women that they probably live thousands of miles away and do not have to worry about people they know finding out they work at a brothel or do pornography. The county, local law enforcement, and the State have done nothing to stop these illegal inducements through advertising.

And what are they inducing women to do? To sell their bodies in brothels located in isolated desert regions. Once there, the woman is charged rent to stay at the brothel that she must work to pay off.[3] She must be ready to be called out into a lineup whenever a buyer arrives and await a buyer to select her.[4] She takes the buyer to a room that is wired for sound, negotiates the fee and the acts she must perform, and the house takes half the fee.[5] Of the remaining half, she must pay her rent, food, the condoms required by state law (NAC § 441A.805), STD testing, as well as

---

[3] Julie Bindel, *'It's like you sign a contract to be raped',* The Guardian (Sep. 7, 2007), https://www.theguardian.com/world/2007/sep/07/usa.gender.
[4] *Id*.
[5] Chariane K. Forrey, America's "Disneyland of Sex": Exploring the Problem of Sex Trafficking in Las Vegas and Nevada's Response, 14 Nev. L.J. 970, 981 (2014).

whatever clothes, makeup, cleaning supplies, or other personal items she needs. If she violates house rules, for example, falling asleep on her 12-14-hour shift, she must pay a fine.[6] She must also tip other workers like security guards and drivers who bring in customers.[7] On average, a woman keeps 20 cents of every dollar she earns, a meager amount compared to what is promised.[8] Brothels can maintain their own house rules and typically require that women live there for extended periods, one to three weeks at a time.[9] Workdays are as long as 12-14 hours and many brothels do not permit the women to have their own transportation.[10]

Plaintiff Charleston asserts that her trafficker would send her to brothels as a punishment, because she would be isolated in a remote desert location, unable to leave, and unable to turn down sex buyers in order to pay for her stay there. (ER0029, ¶¶ 79 – 82). Considering the desert isolation, inability to escape, extreme rules, and forced labor conditions, punishment is an apt description. While the State did not directly prostitute or traffic these Plaintiffs, its lack of enforcement in an already confusing legal scheme allows brothels to induce women and encourage traffickers to bring women across state lines.

---

[6] Julie Bindel, *'It's like you sign a contract to be raped',* The Guardian (Sep. 7, 2007), https://www.theguardian.com/world/2007/sep/07/usa.gender.

[7] *Id.*

[8] Forrey, supra at 982.

[9] *Id*. at 980.

[10] https://www.theguardian.com/world/2007/sep/07/usa.gender.

Therefore, women are induced across state lines where they find themselves in the remote desert and immediately incurring expenses through a kind of debt bondage that they must repay through the only means they have available to them: selling their bodies. That these acts are occurring right under the State's nose without interference are clear violations of the Mann Act and the TVPA.

> **2.** **Nevada's provision of legal cover for Mann Act and TVPA violations is a Thirteenth Amendment violation, and state actors can be sued under Section 1983 for Thirteenth Amendment violations.**

As noted above, Thirteenth Amendment violations can occur through state legislation creating state endorsed slavery or creating incentives for slavery-like conditions. And Thirteenth Amendment violations can violate Section 1983. *See, e.g.*, *Jobson v. Henne*, 355 F.2d 129, 131-32 (2d Cir. 1966); *McGarry v. Pallito*, 687 F.3d 505, 510–11 (2d Cir. 2012).

In *Pallito*, a court found that a detainee stated a claim for a 13th Amendment violation based on the jail's work requirement – required labor under threat of shackles and in substandard conditions, when the detainee had not yet been convicted of any crime. *Pallito* at 508-09. The Court wrote:

> The Thirteenth Amendment provides that "neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1 . . . The Amendment was intended to prohibit all forms of involuntary labor, not solely to abolish chattel slavery . . . Because the

17

Thirteenth Amendment denounces a status or condition, irrespective of the manner or authority by which it is created . . . institutions housing pretrial detainees are not exempt from the Amendment's scope.

*McGarry v. Pallito*, 687 F.3d 505, 510–11 (2d Cir. 2012) (cleaned up).

Similarly, in *Jobson*, a court reversed a district court's grant of a summary judgment motion, due to a lack of facts in the record about whether a mental health institution inmate was subjected to slave labor conditions. *Jobson v. Henne*, 355 F.2d 129, 131-32 (2d Cir. 1966) (reversing summary judgment motion in Section 1983 claim based on the Thirteenth Amendment).

The TVPA and Mann Act are evidence of what rights the Thirteenth Amendment protects, not necessarily preempting all state laws on prostitution. Both laws were enacted to stop slavery, as Plaintiffs alleged. (ER0014-ER0015. at ¶¶ 10, 14-16). As described above, the Thirteenth Amendment has applied to forced labor within a prison system – which is actually permitted, post-conviction, U.S. Const. amend. XIII , and it certainly applies to sex slavery, which is never permitted.

Plaintiffs have alleged that Defendants provided legal cover for the sex industry, which always leads to sex trafficking, and specifically led to the Plaintiffs' sex trafficking, in violation of the Thirteenth Amendment. (ER0014-ER0044 at ¶¶ 21-30, 37-38, 41-56, 74, 77-79, 83-87, 132-33, 140-49, 169, 182, 183-86, 191-202, 205-06). Accordingly, Plaintiffs have alleged facts showing how the Defendants

provided legal cover for slavery, which is properly subject to a Section 1983 action for Thirteenth Amendment violations.

### D.  Defendants' Procedural Objections Do Not Warrant Dismissal

#### 1.  Defendant Sisolak is not entitled to Eleventh Amendment immunity in a Section 1983 lawsuit against him in his official capacity.

Section 1983 permits a government official to be sued in their official capacity for constitutional violations.

The purpose is to give a right of action to those deprived of their constitutional rights under color of state law.  42 U.S.C. § 1983; *Mitchum v. Foster*, 407 U.S. 225, 226 (1972).  Moreover, the deprivation of rights need not be an abuse of authority but non-use of the authority to enforce the law.  42 U.S.C. § 1983; *Miller v. Carson*, 563 F.2d 757 (5th Cir. 1977).  If no authority could be sued, then there would be no right of action for those deprived and in need of redress, defeating the purpose of § 1983.

Here, Governor Sisolak is being sued in his official capacity for grossly neglecting to oversee and enforce the laws that brothels repeatedly violate related to advertising, which induce women to work there by crossing state lines, in violation of the Mann Act.  Moreover, as Plaintiffs have alleged, the conditions of the brothels

are replete with violations of the TVPA, indicating a lack of supervision and enforcement of the rights of women working within the brothels.

The request for relief in the form of an exit fund is not monetary damages that would be awarded the plaintiffs. On the contrary, it would be a fund designed to support individuals who need to exit or have exited the commercial sex trade, consistent with state laws that prohibit prostitution and trafficking. This fund need not strain state resources, either. The fund may be supplied through forfeiture and fines levied against those violating the laws against prostitution and trafficking. Regardless, the form of remedy need not be determined at the pleading stage. Section 1983 permits declaratory and injunctive relief, and it also permits nominal damages. It is silent on other forms of relief. Plaintiffs do not seek monetary damages for themselves, consistent with §1983.

In Nevada, prostitution is prohibited except in licensed houses of prostitution, or brothels. NRS § 201.354(1). The State statute only permits brothels to operate in unincorporated cities in counties with less than 700,000 people. NRS § 244.345 (8). They are not automatically permitted, however, but must be approved by county commissioners. NRS § 244.345 (1). Advertising of brothels is restricted to counties where it is legal. NRS § 201.430.

While the State may seem agnostic by permitting counties to decide whether or not they allow brothels, the restrictions reflect a substantial interest in limiting the

20

demand by keeping the brothels out of major cities and by limiting advertising. *Coyote,* 598 F.3d at 600-01. Once permitted by the county, the related laws are generally left to local law enforcement. However, the State Board of Health controls the STI testing which happens on a monthly basis for HIV and a weekly basis for all other testing. NAC § 441A.800. The district health official handles this but when a district does not have a health officer or a designee, the Chief Medical Officer or Chief Medical Officer's designee is responsible. NRS § 441A.120. When a health violation is discovered, local law enforcement is notified in order to enforce the consequences. NRS § 201.356. Thus, the state and county governments interact in enforcing the state laws.

No single regulatory board oversees these different facets for consistency. Compare with cannabis, where once legalized, Nevada created a cannabis board to oversee its management. NRS 678A *et seq*. The lack of oversight in these interactions creates confusion and gaps in enforcement. The Ninth Circuit Court itself found the prostitution scheme in Nevada too confusing to clearly determine its legality and opted not to do so. *Coyote,* 598 F.3d at 606.

The State has allowed brothels in these limited circumstances and has the power to disallow them. The intent behind allowing them was to regulate the situation, require STI testing, and make the circumstances safer for those involved. *Coyote*, 598 F.3d at 605. While the state-run testing program has been successful in

21

mitigating HIV and other STIs, the testing focuses entirely on the women who work in brothels and subjects them to repeated privacy violations, discrimination, and stigma.[11] Thus, the state is just facilitating the sex buyers and not prioritizing considerations for the women in brothels.

As previously noted, violations at the brothels abound. Exited women report harsh conditions, isolation, an inability to refuse a customer, violence, continuing interactions with pimps, and general safety violations. A Lyon County Sheriff's Office audit found a prevalence of markers for human trafficking among the women in the brothels. (ER0288-ER0296).

Moreover, police sometimes impose their own rules, like not permitting women to leave the brothels after a certain time, and seem to ignore other rules, like enforcing the advertising bans. With a vested interest in the licensing fees generated by brothels, there may be conflicting motivations in enforcement.[12]

So, who polices the police when they go too far or fail to enforce state law? Where the enforcement scheme is unclear or inconsistently applied, the governing authority may be held responsible. *Ortiz v. United States,* 885 F. Supp. 363, 366 (D.P.R. 1995) (finding the Navy negligent for not consistently and clearly enforcing rules against civilians entering a restricted area where a father was injured by an

---

[11] Forrey, supra at 981.
[12] Forrey, supra at 982.

explosive device in restricted waters the Navy used for training exercises). Because the Nevada laws do not provide an answer to this question, the Governor must be ultimately responsible for enforcement, or lack thereof.

> **2.     If the Nevada counties are required parties to the suit, failure to name them as defendants at most warrants a court order to join them, not dismissal.**

Even if the counties are required parties to the suit under Rule 19, then the initial failure to name the counties as defendants at most warrants the joinder of the counties as defendants, not the dismissal of the case.

If a court determines that a party not named as a defendant is a required party under Rule 19, the proper remedy is for the court to join the party as long as joinder does not deprive the court of subject matter jurisdiction. Fed. R. Civ.P. 19(a)(1-2). *Sierra Club v. Hodel,* 848 F.2d 1068, 1077 (10th Cir. 1988), *overruled on other grounds by Village of Los Rancheros De Albuquerque v. Marsh*, 956 F.2d 970, 973 (10th Cir. 1992). Dismissal is not appropriate unless the required party cannot be joined for one of these reasons. Fed. R. Civ.P. 19(b) ("[O]nly if joinder is impossible must we determine in whether, 'equity and good conscience,' the suit should be dismissed." *Alto v. Black*, 738 F.3d 1111, 1126 (9th Cir. 2013). In accordance with this principle, courts have permitted the joinder of counties that were required parties to suits even when plaintiffs were unable to sue the counties directly because of their potential immunity. *Sierra Club v. Hodel,* 848 F.2d 1068, 1077 (10th Cir.

1988), *overruled on other grounds by Village of Los Rancheros De Albuquerque v. Marsh*, 956 F.2d 970, 973 (10th Cir. 1992).

In this case, the court has not even determined that the counties are required parties under Rule 19(a). Even if they are required parties, the proper remedy is not dismissal but the joinder of the parties. Therefore, not naming the counties as a defendant in this suit does not merit dismissal under Rule 19.

### 3. The First Amended Complaint was filed within the applicable statutes of limitations.

The First Amended Complaint was filed on March 18, 2019, and the statute of limitations has not yet run for any of the plaintiffs. In Section 1983 cases, the statute of limitations is based on the underlying state statute, since Section 1983 itself has no statute of limitations. 42 U.S.C.A. § 1988. In this case, the underlying offenses are rape and sex trafficking; therefore, the TVPA and any relevant Nevada statutes on sexual assault and sex trafficking control the statute of limitations, not personal injury law. Under the TVPA, sex trafficking violations have a ten year statute of limitations. 18 U.S.C.A. § 1595. Ms. Delgado-Williams clearly falls within this statute, since she was trafficked until 2017 (ER0039 at ¶ 166). Ms. Charleston is also within this statute, since she was trafficked until 2009 and the initial complaint was filed in 2019. (SER0001-SER0026).

Ms. Byrd was trafficked from 1998 until 2002. (ER0041-ER0042).  However, she was a minor of age fourteen at the time. (ER0040).  Therefore, Section 171.095, which governs the statute of limitations for offenses constituting sexual abuse or sex trafficking of a child, applies here. NRS § 171.095.  In situations where the victim was a minor under eighteen, the statute of limitations is extended until the victim is thirty-six years old. NRS § 171.095(1)(b).  Since the complaint was filed in 2019, Ms. Byrd was within this age limitation (ER0011-ER00055).  Therefore, for all three plaintiffs, this action was timely filed.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## III. CONCLUSION

For the foregoing reasons, the Plaintiffs request that this Court reverse the District Court's decision to dismiss the First Amended Complaint.

Date: July 27, 2020

Hutchison & Steffen, PLLC

/s/ Jason D. Guinasso
Jason D. Guinasso (NV Bar No. 8478)
Hutchison & Steffen, PLLC
500 Damonte Ranch Parkway, Suite 980
Reno, NV 89521
775.853.8746
jguinasso@hutchlegal.com

Christen M. Price (DC Bar No. 1016277)
Benjamin W. Bull (DC Bar No. 388206)
National Center on Sexual Exploitation
440 1st St. NW, Suite 840
Washington, D.C. 20001
202.393.7245
cprice@ncoselaw.org
bbull@ncose.com

*Attorneys for Appellant Rebekah Charleston; Angela Delgado-Williams; Leah Albright-Byrd*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | No. 19-17423

I am the attorney or self-represented party.

**This brief contains** | 5,934 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

⦿ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ⦿ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [          ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Jason D. Guinasso | **Date** | 7/27/2020

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/2018*

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 15. Certificate of Service for Electronic Filing**

*Instructions for this form:* [http://www.ca9.uscourts.gov/forms/form15instructions.pdf](http://www.ca9.uscourts.gov/forms/form15instructions.pdf)

| **9th Cir. Case Number(s)** | No. 19-17423 |
|---|---|

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐   I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☒   I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

Russell Greer
7901 South 3200 West
P.O. Box 152
West Jordan, Utah 84088

**Description of Document(s)** *(required for all documents)*:

APPELLANTS' REPLY BRIEF

| **Signature** | s/ Bernadette Francis | **Date** | 7/27/2020 |
|---|---|---|---|

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at [forms@ca9.uscourts.gov](mailto:forms@ca9.uscourts.gov)

**Form 15**          *Rev. 12/01/2018*